[No. 12918.  Department Two.  January 15, 1916.]

ED. E. HARDIN *et al.*, *Respondents*, v. OLYMPIC PORTLAND CEMENT COMPANY, LIMITED, *Appellant*.[1]

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. Error cannot be predicated upon the giving of an instruction upon the measure of damages when it could not have misled the jury when taken in connection with other instructions, some of them given at the request of the appellant.

NUISANCES—PERMANENT NUISANCE — DEFINITION — LAWFUL BUSINESS—NUISANCE PER SE—INSTRUCTIONS—DAMAGES. An instruction correctly defining what would amount to a permanent nuisance to adjoining property through the operation of a lawful business upon defendant's property, and permitting recovery therefor as a matter of law, is not necessarily erroneous in inappropriately defining the same as a nuisance *per se* when a lawful nuisance is never a nuisance *per se;* since the operation of a lawful business may become a nuisance in fact, the determination of which is a question of fact, and the defendant could not operate its business in the manner so properly defined in the instruction without compensating the adjoining owner for the damages actually suffered.

SAME—MEASURE OF DAMAGES. In such a case, when the injury and damage are established, the measure thereof should be that most beneficial to the injured party entitled to enjoy his property intact.

SAME—PERMANENT NUISANCE—PRIVATE INJURY—RELIEF—DAMAGES —RIGHT TO PERMANENT DAMAGES. An adjoining landowner may sue

[1]Reported in 154 Pac. 450.

once for all to recover temporary damages for past injuries to his crops and fruit trees, and for permanent damages to his freehold, suffered through the lawful operation of defendant's cement plant, which threw off fumes and gases and cast particles upon plaintiffs' premises, upon the theory that the same was a permanent nuisance even if it were not a nuisance *per se*, where the defendant intended to maintain the same and could not avoid the injury; since plaintiff in such case has recourse to relief in damages as less onerous and harsh than equitable relief by injunction.

SAME—PERMANENT DAMAGES—SCOPE OF RELIEF—JUDGMENT—BAR. In such a case, the framing of plaintiffs' action precludes any further legal or equitable relief for any injury or damage in the future to respondents' real estate and the enjoyment thereof, by the lawful operation of defendant's plant.

SAME—PERMANENT DAMAGES—DEFENSES—INTENT TO DISCONTINUE. In such a case, defendant cannot assert that the injury is not a permanent one for the reason that the same might be discontinued, where all of the evidence tended to show that the business was more or less permanent and that a substantial plant had been erected with a large amount of materials at hand; since an intention to discontinue and its temporary character could have been the subject of proof.

SAME—PERMANENT DAMAGES — ACTION TO RECOVER — ISSUES AND TRIAL. Where, in such a case, on objection to testimony, counsel for plaintiff stated the theory of the action, and that recovery of permanent damages would include any future damages, whereupon defendant withdrew the objection, in order to avoid permanent damages it was incumbent upon the defendant to show that the nuisance would be discontinued; and the plaintiff was estopped to claim any other or additional relief in any other form of action.

Appeal from a judgment of the superior court for Whatcom county, Pemberton, J., entered November 25, 1914, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages from a nuisance. Affirmed.

*Hadley, Hadley & Abbott*, for appellant.

*Hurlbut & Neal* and *Romaine & Abrams* (*Ed. E. Hardin, in propria persona*), for respondents.

HOLCOMB, J.—Respondents own fifteen acres of land near Bellingham, Washington, and the appellant owns a tract of

11—89 WASH.

land lying immediately southerly of, and contiguous to, the lands of respondents. Prior to May 1, 1913, appellant constructed upon its land a large plant for the manufacture of Portland cement, and on or about that date began the manufacture of Portland cement in its plant, and has from that time continued such manufacture to a greater or less degree.

Respondents' complaint proceeds upon the theory that appellant owns in fee the site of the cement plant and large deposits of clay and limestone used in the manufacture of cement sufficient to supply its plant and operate it to its full capacity for more than fifty years, and that the capacity of the plant at present is about one thousand six hundred barrels of cement per day. It is alleged that appellant intends to continue to manufacture, handle, and dispose of cement at its plant as it now is. It is alleged that, in the process of the manufacture and in the handling and disposing of the cement, noxious fumes and gases and particles of cement materials and cement were thrown out from the plant and carried by the prevailing winds in, over, and upon respondents' premises, penetrating the dwelling house · and rooms, and injuring and destroying vegetation, and that respondents' premises are no longer desirable, comfortable, or valuable as residence property; that they have been greatly depreciated in value, and that, by reason of the things alleged in the complaint, this depreciation is permanent.

Appellant, by answer, admits that it owns in fee the deposits of clay and limestone, and is taking and using in its cement plant raw materials used in the manufacture of cement; that it has deposits sufficient to supply materials for the operation of the plant at its full capacity for more than fifty years; that it now manufactures about eight hundred barrels per day; that its present capacity is about sixteen hundred barrels of cement per day, and that it intends so to continue the manufacture of cement. It denies the allegation that large bodies of cement and the constituent elements thereof were blown by the prevailing winds in, over, and

upon the premises of respondents, and deposited thereon; denies the injury to the crops, shrubs, trees, fruits, and grasses of respondents, as alleged, and denies generally the allegations of damage in the complaint.

I.   Complaint is made of the tenth instruction given by the court to the jury, as follows:

"You are further instructed that, if you find from the evidence by a fair preponderance thereof, that the plaintiffs' land in the complaint described has been materially damaged by the operation of its cement plant, in the manner alleged in the complaint, and that such damage is permanent in character, then I instruct you that, in estimating the plaintiffs' damages to their said land the measure of such damages is the difference between the market value of the land as it was immediately before it was so damaged and the market value of the same in its damaged condition at the time of the bringing of this action, to-wit, August 6, 1914, as a result of the operation of the defendant's cement plant."

Appellant contends that the giving of this instruction was error, for the reason that it incorrectly states the measure of damages in cases of permanent nuisance; that the proper rule in case of permanent nuisance is the difference in market value before and immediately after the injury; citing *Hunt v. Johnson* (Tex. Civ. App.), 129 S.W. 879; and *Missouri, K. & T. R. Co. v. Dennis* (Tex. Civ. App.), 84 S. W. 860.   The theory on which this contention is based is that the instruction resulted in permitting the jury to assess double damages.   Respondents sued to recover $175 as temporary damage by reason of the injury to and loss of crops, as well as for the sum of $2,824.99 for permanent damages to their freehold.   Respondents do not question the correctness of the rule contended for by appellant, but insist that the instruction complained of is the equivalent of an instruction numbered six by the court which was given as requested by appellant, which limited the consideration of the jury of the question of damages to the fruits, trees, grass, shrubbery, etc., and instruction number seven given by the court

as to such items of the damage, stating the measure of damages to be the difference between the market value of the crops at the time of receiving the injury and their market value in the injured condition at the time the injury was received. We think there is no merit in the contention that the jury could have been misled into awarding double damages by reason of that instruction, in so far as this one contention is concerned, taking it in connection with the other instructions given by the court, some of them at the request of appellant.

II. A more serious difficulty is presented by appellant's claim that the eleventh instruction of the court was erroneous, in that the facts specified by the court to the jury as establishing the plant as a nuisance *per se* do not in law constitute a permanent nuisance nor warrant the application of the measure of damages allowed in the case of permanent nuisance.

By the portions of that instruction which are complained of, the jury was told that, if (a) the character of its construction and equipment is modern, (b) the machinery and appliances are so placed and adjusted as to function properly and are properly and skillfully operated, (c) under such conditions the prevention of injury and damage upon which the instruction is predicated is not had, (d) such fumes, etc., are carried upon respondents' property by the prevailing winds and settle and interfere with the comfortable enjoyment of the property, or materially damage the same, and (e) in the careful and skillful operation of the plant, as so constructed and at its present capacity, it will necessarily continue to throw off such gases, etc., and that the same will be carried over and upon and injure respondents' property; then, as a matter of law, appellant's plant would be a nuisance *per se*, and that, as a matter of law, any damages to respondents' land, resulting in the depreciation of the value of the land, would be permanent, and it would be the duty of the jury to assess damages for such permanent deprecia-

tion of the value of the land not exceeding the amount sued for.

"A nuisance *per se* is an act, thing, omission, or use of the property which in and of itself is a nuisance, and hence is not permissible or excusable under any circumstances." 21 Am. & Eng. Ency. Law (2d ed.), p. 683.

The court in the instruction criticized may have used the term "nuisance *per se*" inappropriately, for there is much apparent conflict of authority on the question whether or not a lawful business or erection can be a nuisance *per se*, but the instruction is not vitiated by such definition. Since there must be some place where every lawful business may be lawfully located or carried on, the better rule would seem to be that a lawful business is never a nuisance *per se*, but may become a nuisance by reason of extraneous circumstances, such as being located in an inappropriate place, or conducted or kept in an improper manner. 21 Am. & Eng. Ency. Law (2d ed.), p. 684; Wood, Nuisances, §§ 529, 530. In such case, it is a nuisance in fact, and the determination is a question of fact. A smelting plant is not a nuisance *per se*, but may be located so as to be one in fact to other property owners. *Sterrett v. Northport Min. & Smelting Co.*, 30 Wash. 164, 70 Pac. 266.

No one has a right, however, to pursue a lawful business, if thereby he injures his neighbor (except such injuries as the public must suffer in common in order to permit lawful enterprises to operate), without compensating such for the damages actually sustained. *Sterrett v. Northport Min. & Smelting Co., supra.* In such case, when the injury and damage are established, the measure thereof should be that most beneficial to the injured party, as he is entitled to have the benefit and enjoyment of his property intact. 28 Am. & Eng. Ency. Law (2d ed.), p. 543; *Park v. Northport Smelting & Refining Co.*, 47 Wash. 597, 92 Pac. 442.

Appellant contends, however, that respondents could not recover permanent damages unless a nuisance constituted a

nuisance *per se,* and that it was upon that theory that they presented the case and upon which the court submitted it to the jury. And, further, as we understand, that unless a nuisance were a nuisance *per se,* it would not constitute a permanent nuisance, and that the jury were not entitled to award damages on the theory of a permanent nuisance. Respondents, on the contrary, contend that the question of whether it is a nuisance *per se* is not determinative of the question of whether permanent damages may ensue from its maintenance and operation; and further maintain that, unless permitted to sue once for all for damages to the freehold, they would be denied a legal remedy and would be obliged to resort to equity for an injunction closing the industry; that it is the policy of this state and of the law not to enjoin the operation of an industry unless the necessity be great and redress at the hands of the court and jury would be inadequate; citing *Woodard v. West Side Mill Co.,* 43 Wash. 308, 86 Pac. 579; 29 Cyc. 1226-1228.

In *Richards' Appeal,* 57 Pa. St. 105, 98 Am. Dec. 202, it was said:

"The chancellor will consider whether he would not do a greater injury by enjoining than would result by refusing, and leaving the party to his redress at the hands of a court and jury. If in conscience the former should appear he will refuse to enjoin."

In *Owen v. Phillips,* 73 Ind. 284, it was said:

"It is important to keep in mind the fact that the business of milling does not belong to that class which constitute nuisances *per se.* It is also important to sharply mark the distinction between suits for injunction and actions for damages. In the latter class, the remedy is an ordinary one; in the former, the extraordinary powers of the court are invoked. It is not every injury which will support an action for damages that will entitle the complainant to relief by injunction. . . . A lawful business may be so conducted as to become a nuisance, but, in order to warrant interference by injunction, the injury must be a material and essential one. Damages may be paid by the author of the nuisance

and the business not be stopped, but if injunction issues then the right to conduct the business is at an end. The necessity which will authorize the granting of the writ of injunction, to restrain the carrying on of a business lawful in itself, must be a strong and imperious one."

It would seem, therefore, that the respondents had recourse to that remedy which was least onerous and harsh upon appellant, and that the complaint of the respondents was based upon the theory that they intended to cover every injury and every remedy which they had or could have against appellant for the maintenance and operation of the cement plant and the permanent injury to their freehold, except the stopping of its maintenance and operation. Of course, there may be temporary injuries and damage, such as injuries to crops and the like, arising in the future, but the framing of respondents' action precludes any further legal or equitable relief for any injury or damage in the future to respondents' real estate and the enjoyment thereof, by the lawful operation of appellant's plant.

Appellant says, however, that a nuisance which may be discontinued is not a permanent one. It was admitted by the pleadings that it was the intention of the appellant to continue the operation of this plant, but appellant claims that this admission was not intended to admit that appellant would continue the operation of its plant indefinitely, and that the admission was made prior to the recovery of a verdict for respondents; or, in other words, prior to a judicial determination against its defense. This means, of course, that, it having been judicially determined that the appellant is conducting in a proper manner a lawful business in a place that renders it a nuisance in fact to a neighbor, appellant may discontinue it hereafter. But all the evidence tends to show that its business is more or less permanent; that it has a substantial plant erected, a large amount of money invested, and a large amount of materials suitable for its manufacture at hand. If it were its intention to discontinue the

maintenance of the plant and show that it was of a tempo-
rary character, then it was the subject of proof. *Remsberg
v. Iola Portland Cement Co.*, 73 Kan. 66, 84 Pac. 548.

During the progress of the trial, objection was made to
certain testimony offered by respondents, and thereupon in-
quiry was made by counsel for appellant of counsel for re-
spondents as to the theory upon which respondents were pro-
ceeding.    Respondents' attorney thereupon stated to the
court and counsel that respondents were proceeding on the
theory that they had suffered temporary and permanent dam-
age and were seeking to recover for the damage they had
suffered by reason of the alleged nuisance, including both
temporary and permanent damages, and if they recovered
permanent damages, such damages as they would suffer in
the future would be included therein; that the temporary
damages were confined to the damage to crops for two years,
such as had been sustained up to the time of the filing of
the complaint, and the balance of the claim proceeded from
a permanent injury to the freehold.    Appellant's counsel
thereupon stated that appellant withdrew its objection under
the statement of counsel.

It is difficult to see why counsel for appellant now insist
that the respondents were not proceeding upon the theory
that they were recovering upon one cause of action for the
temporary damages for injuries to and destruction of crops
for the preceding two years, and upon the other cause of
action for the permanent injuries to the freehold, which would
include all damages of every possible nature to the freehold,
for injury, deterioration and depreciation thereof, which had
been suffered by reason of the alleged nuisance up to the
time of the commencement of the suit.    The case of *Cleveland
C. C. & St. L. R. Co. v. King*, 23 Ind. App. 573, 55 N. E.
875, is cited and quoted as follows:

"During the progress of the trial, objections were made
to certain testimony offered by the appellee.  'After said
objection was made by the defendant, the court thereupon

requested plaintiff to state the theory of her complaint, whether she was seeking to recover for a permanent injury to property or for a continuous wrong. Plaintiff's attorney thereupon stated to the court and counsel for defendant that the theory of the complaint was for permanent damages to plaintiff's property. The court thereupon announced that it would be so considered and treated, and he would so instruct the jury. Defendant's counsel thereupon stated that they were satisfied, if that was the theory of plaintiff's case, and would not object to the testimony.' To the theory thus announced appellee must be held. *Louisville, etc., R. Co. v. Renicker*, 8 Ind. App. 404; *Cleveland, etc., R. Co. v. Duggan*, 18 Ind. App. 435, and authorities there cited. It follows that the question presented is, does the evidence show a permanent nuisance?

"Where the injury is of a permanent character, that is, one that can not be discontinued, there is a permanent injury. If the evidence fails to show a permanent injury, the theory of the complaint is not supported, and the verdict must be contrary to law. *Louisville, etc., R. Co. v. Renicker, supra; Equitable Ins. Co. v. Stout*, 135 Ind. 444.

"The pond in question was not constructed by appellant. The evidence does not show that the pond itself constituted a nuisance. The injury was caused by throwing filth into the water. The question is not here presented whether upon proper complaint appellee could recover damages for injuries during the existence of the nuisance and up to the time of the commencement of the action, but whether she can recover upon proof of temporary injury. A nuisance which may be discontinued is not a permanent one."

The circumstances shown in that case are not such as those shown here. In that case, it was said that the evidence of injury was that the injury was caused by throwing filth into the water of a pond; that the question was not there presented whether, upon proper proofs, appellee could recover damages for injuries during the existence of a nuisance and up to the time of the commencement of the action, but whether she could recover permanent damage upon proof of temporary injury. A nuisance which may be discontinued is not a permanent one. It is obvious in the present case that the

proof proceeded upon the exact theory which the court in that case stated it did not, and it was evident in that case that the nuisance was one which might easily be discontinued at any time and was, therefore, not a permanent one.

In the instant case, we think it was incumbent upon the appellant to show, if it desired, that it was its intention to discontinue the nuisance complained of, in case it should be determined a nuisance; and that, if it did not so show, it must be assumed to be a permanent nuisance as to the respondents. But it must also be held and determined that respondents are now estopped to claim in any form of action any other or additional permanent relief against the operation of appellant's plant. Respondents were entitled to recover permanent actual damages occasioned by the creation and operation of a permanent, existing nuisance in one action. All questions of damage are settled. We do not consider, therefore, that the instruction numbered eleven given by the court was prejudicial, but think that it properly defined the respective rights of respondents and appellant, and submitted the same to the jury for consideration as to the facts.

There was evidence tending to support the recovery of a very substantial sum on the theory of permanent injury to the freehold and permanent depreciation of its value, and the verdict of the jury is supported by such evidence.

Judgment affirmed.

BAUSMAN, PARKER, and MAIN, JJ., concur.