[No. 18510. Department Two. October 10, 1924.]

EFRAM BARTEL et al., Appellants, v. RIDGEFIELD LUMBER COMPANY, Respondent.[1]

NUISANCE (9) — PRIVATE NUISANCE — OPERATION OF SAWMILL — DAMAGES. A mill owner is liable for substantial damages to adjacent farm property caused by smoke, cinders, sawdust and burning particles, cast on such land from the mill burner, notwithstanding the burner was customary, suitable and necessary and was operated without negligence, and notwithstanding the burner was in operation at the time plaintiff acquired his farm.

SAME (5)—PRIVATE NUISANCES—GROUNDS FOR INJUNCTION. Injunction will not lie to restrain a mill company from operating a burner which casts smoke, cinders and burning particles upon adjacent land, to its substantial damage, where the mill company is solvent, its business was important and its property valuable and it could not operate without operating the burner, while the injured property was comparatively of small value.

Appeal from a judgment of the superior court for Clarke county, Simpson, J., entered September 25,

[1]Reported in 229 Pac. 306.

1923, in favor of the defendant, in an action for damages and to enjoin a nuisance, tried to the court. Affirmed in part and reversed in part.

*Edgar M. Swan,* for appellants.

*McMaster, Hall & Schaefer,* for respondent.

BRIDGES, J.—Plaintiff seeks damages and injunction. He appeals because the decision below went against him. The points involved cannot be discussed without a finding with reference to the facts.

Ridgefield is a small mill town in the southern part of western Washington. It has a population of but a few hundred. Close by is Lake river, and on its east bank is located the respondent's sawmill. About three hundred feet to the north of the mill is appellant's property. It is a farm of some ten or twelve acres, mostly in cultivation, and has a small dwelling where appellant and his family reside. The mill was in operation at its present location when appellants bought their property and moved there, but since then changes have been made in the mill. When the wind is in the right direction—which is not infrequently— smoke, sawdust and burned or half-burned embers emanating from the respondent's burner come to appellant's place and do material damage. The fruits and vegetables are not salable and are hardly fit for use, the visiting elements enter the house and get into the food, and clothing left in the yard is damaged. When the wind is not from the south, appellants are not troubled by the burner.

Respondent's lumber mill is located at one side of the town, in what may be termed the manufacturing district. Since appellants bought their land, one or two other mills have been located near that of respondent and are in operation. It is necessary that respondent's sawdust, slabs and other waste material

be destroyed in some way. The best known method is by burning it, and the best known method of burning it is in what is commonly called a burner. Sometimes this is an elaborate affair, particularly in connection with large sawmills, being built of various expensive materials, and are many feet in circumference and from fifty to one hundred feet in height. The smaller mills, such as that operated by the respondent, generally have less expensive burners, but which for the purpose intended are to all intents and purposes as good as the more expensive ones.

After respondent became the owner of the mill and in an effort to overcome objections made by appellants, it built a burner and has for a number of years past operated it. It is of the usual kind for mills of this character, and for the most part is made of corrugated roofing. It is located at the only place it could be located with reference to the mill and is some 300 feet south of appellants' residence. It is conical in shape, and over its top is a spark arrester which has the usual mesh. A smaller mesh would not be practicable. Into this burner are thrown sawdust, slabs and other refuse created in the operation of the mill. Near the bottom of the burner there are a number of holes of considerable size which furnish draft. In a few places, holes of medium size have been made by heavy slabs, but they merely serve as additional draft and do not materially affect the merits of the burner. The respondent has at all times kept its burner in good repair and has operated it in a careful manner. In other words, the burner is amply sufficient for the purpose for which it is constructed and has been operated at all times with due care.

We agree with the trial court in its finding that the burner is a "suitable one for the operation of a sawmill of the character and capacity of the one here in

question," and that it has at all times "been conducted in a careful and proper manner without negligence, and with the use of suitable methods and devices for diminishing the effect of smoke, soot, cinders, etc., upon surrounding property," and that "such ashes, cinders, etc. as may be deposited upon the premises of the plaintiffs cannot be prevented from escaping through the meshes of the spark screen in the refuse burner," and that the only way to avoid such is to stop the operation of the mill, and that the damage to the appellant "is not due to any negligence on the part of the defendant." Boiled down, the facts come to this, that nowithstanding the respondent has a suitable and competent burner and maintains and operates it with due care, the appellants are damaged because of smoke, cinders, sawdust and burning particles coming therefrom.

The respondent's argument is that, since it is carrying on a perfectly lawful and very important business in a lawful and careful manner, and is in no wise at fault, it ought not to be held in damages or its operation enjoined simply because of a consequential injury resulting to the appellants. On the other hand, the appellants' position is that they have a lawful right to be where they are and that nobody, whether negligently or otherwise, has any right to injure their property, and that every man must so carry on his business as to do no material damage to his neighbor.

Here we seem to have two fundamental principles of law running directly to a head-on collision, and we must decide which has the right of way. Two matters are before us; first, are appellants entitled to damages; and, second, are they entitled to an injunction. These questions are very important in this state. Our decisions on the general principles involved do not seem to be very harmonious. We have held that no damages

can be recovered for injuries which are the natural result of the use of a stream as a highway when the operations are conducted in a reasonably careful manner, and that damages under such circumstances are recoverable only when based on negligence. *Mitchell v. Lea Lumber Co.*, 43 Wash. 195, 86 Pac. 405, 10 Ann. Cas. 231, 9 L. R. A. (N. S.) 900. We have at least strongly intimated that where smoke, cinders, soot and ashes from a mill fall upon adjoining premises, no action for damages will lie unless negligence is shown. *Woodard v. West Side Mill Co.*, 43 Wash. 308, 86 Pac. 579. We have also held that noises and the jarring of buildings and the casting of smoke and cinders thereon were necessarily incident to the operation of a railroad, and damages therefor could not be recovered in the absence of negligence. *DeKay v. North Yakima & Valley R. Co.*, 71 Wash. 648, 129 Pac. 578.

On principle, these cases would seem to hold that if one carries on a legitimate business in the usual manner without carelessness, he is not liable for injuries resulting to adjacent property.

But we have also held that one operating a smelter without carelessness has no right to injure adjoining property by throwing thereon destructive fumes, saying:

"No one has a right, however, to pursue a lawful business, if he thereby injures his neighbor . . . . without compensating such for the damages actually sustained." *Sterrett v. Northport Mining & Smelting Co.*, 30 Wash. 164, 70 Pac. 266.

We have also held that recovery may be had for damages to a building by the shaking of the earth caused by the construction of a railway tunnel, although no negligence is shown in connection with the construction. *Farnandis v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18, 111 Am. St. 1027, 5 L. R. A.

(N. S.) 1086. In *Burrows v. Grays Harbor Boom Co.,* 44 Wash. 630, 87 Pac. 937, we held that an adjoining property owner, injured by the operation of a log boom, might recover damages, notwithstanding there was no negligence in the operation of the boom. This case criticises the holding of the previous case of *Mitchell v. Lea Lumber Co., supra.* In *Lavner v. Independent Light & Water Co.,* 74 Wash. 373, 133 Pac. 592, we held that where smoke, soot and fumes from a gas manufacturing plant were cast upon plaintiff's residence property, to its substantial damage, the owner thereof was entitled to damages, without regard to the manner in which the plant was constructed or operated. We have also said that the "doctrine of *damnum absque injuria,* when no negligence has been shown," is not the doctrine of this court, and that where a blast of powder caused the surrounding earth to tremble so as to damage adjoining property there was a responsibility therefor, without regard to negligence. *Patrick v. Smith,* 75 Wash. 407, 134 Pac. 1076, 48 L. R. A. (N. S.) 740. In *Hardin v. Olympia Portland Cement Co.,* 89 Wash. 320, 154 Pac. 450, we again said:

"No one has a right, however, to pursue a lawful business, if thereby he injures his neighbor,    .    .    .    without compensating such for the damages actually sustained."

In *Smith v. St. Paul, M. & M. R. Co.,* 39 Wash. 355, 81 Pac. 840, 109 Am. St. 889, 70 L. R. A. 1018, we decided that if property be damaged by a physical visitation thereto of smoke, soot, cinders, etc., a responsibility arose, without regard to negligence or want of care. Stress was there placed upon the physical invasion of the property.

Our cases holding that liability for damages does not necessarily rest on negligence are in accord with

the great weight of authority. The following are a few of the cases outside of this state supporting that principle: *Baltimore & Potomac R. Co. v. First Baptist Church*, 108 U. S. 317; *United States v. Luce*, 141 Fed. 385; *Lead v. Inch*, 116 Minn. 467, 134 N. W. 218, 39 L. R. A. (N. S.) 234; *Boston Ferrule Co. v. Hills*, 20 (Mass.) L. R. A. 844; *Judson v. Los Angeles Suburban Gas Co.*, 106 Pac. (Cal.) 581, 26 L. R. A. (N. S.) 183; *Bohan v. Port Jervis Gas Light Co.*, 9 L. R. A. 711; *Susquehanna Fertilizer Co. v. Malone*, 9 L. R. A. 737; *Frost v. Berkeley Phosphate Co.*, 26 L. R. A. 693; *Stuhl v. Great Northern R. Co.*, 161 N. W. (Minn.) 501, L. R. A. 1917D 317; *Brede v. Minnesota Crushed Stone Co.*, 173 N. W. (Minn.) 805, 6 A. L. R. 1092.

The rule governing in the foregoing and  many other cases is not that one may use his own property as he sees fit, so long as he uses it in the usual manner and without negligence, but that one may put his property to any use he sees fit, so long as he does not thereby materially damage someone else or his property, and that negligence is not the sole test of responsibility. Where a trade or business is carried on in such manner as to materially interfere with the reasonable and comfortable enjoyment by another of his property or which occasions material injury to the property itself, a wrong is done for which an action for damages will lie, without regard to the locality where such business is carried on and notwithstanding the business be entirely lawful, and notwithstanding the best and most approved appliances and methods may be used in the construction and management of the business.

It is probable that the rule is, and ought to be, that before an action for damages may be maintained, the injury or inconvenience must be substantial, and that redress may not be had for every slight discomfort or

inconvenience. But the testimony here very clearly shows that the appellants' property has been damaged in a substantial manner, and as a direct result of the operation of respondent's mill.

Unquestionably, most of our cases are in accord with the great weight of authority on this question and we think they should be followed. If one may so operate his lawful enterprise, although without negligence, as to materially injure another without responding in damages, the same principle would justify such extensive injury as would entirely drive such other from his home and property. Such ought not, and cannot, be the law.

We do not here mean to apply the doctrine we have announced to persons who have been inconvenienced or otherwise annoyed or injured by noises, vibrations and the like, or to those who in common with many others have been made to suffer. Let such propositions be decided when they arise.

It is said, however, that, when appellants bought their property and moved on to it, the respondent's mill was in operation in substantially the same manner as now, and that they, having come to the nuisance, may not recover. We cannot support this doctrine, nor is it supported by the authorities. In *Brede v. Minnesota Crushed Stone Co., supra,* discussing this question, the court said:

"The fact that many of the plaintiffs acquired their property after defendant began to operate its quarry is of no particular importance. But little is now left of the doctrine under which a person coming to a nuisance had no right to complain of it." See the authorities cited by this opinion.

Our conclusion is that the trial court was in error in not fixing appellants' damages.

But injunction will not necessarily follow damages.

Here the appellants' property is of comparatively small value and importance. That of the respondent is of great value. If we hold that respondent must not, under any circumstances, cast sawdust, smoke and cinders on appellants' property, then we, in effect, forever close the mill. This, under the circumstances, we will not do. The manufacture of lumber is the most important business of western Washington, and no unnecessary interference therewith will be permitted. A reading of the cases which we have cited will show that, while we have often allowed damages under similar circumstances, we have seldom granted injunctions. Apparently respondent is solvent and capable of responding to such damages as the appellants may suffer. It is infinitely more equitable, under all the circumstances, to require them to enforce payment of their damages than to force the closing of this manufacturing plant.

Appellants raise certain other preliminary and minor questions which we find are without merit.

In so far as the trial court refused injunction, his judgment is affirmed; in so far as he denied appellants any recovery of damages, the judgment is reversed.

MAIN, C. J., MITCHELL, PEMBERTON, and FULLERTON, JJ., concur.