[No. 14830. Department One. October 15, 1918.]

UNION MACHINERY & SUPPLY COMPANY, *Appellant*, v. WILLIAM McCUSH, *as Receiver etc., Respondent.*[1]

RECEIVERS (36)—PROPERTY—TITLE—PROPERTY CONDITIONALLY SOLD. In replevin against the receiver of an insolvent vendee in a conditional sales contract, the receiver's wrongful detention of the property after notice of forfeiture of the sales contract and demand for return of the property, subjects the receiver to the legal measure of damages usual in such cases, and not to a contractual measure provided for in the conditional sales agreement, to which the receiver was not a party.

SAME (36). In such a case, the receiver would not be personally liable for legal expenses contracted for by the seller, in addition to statutory costs and disbursements, nor for the cost of returning the property from its place of detention stipulated for in the bill of sale—since the receiver did not assume the insolvent's contracts; nor could the same be made preferred claims against the insolvent's estate.

APPEAL (375)—REVIEW—WHAT REVIEWED IN GENERAL. Error in refusing to treat and allow items as claims against an insolvent cannot be urged where there was no request therefor, and no evidence as to the amounts allowable.

SALES (182)—CONDITIONAL SALES — DEFAULT — DAMAGES FOR DETENTION. Damages for detention after default of machinery conditionally sold, cannot be recovered until lapse of a reasonable time for its return.

SAME (182). Damages stipulated in a conditional sales contract for wrongful detention after demand cannot be allowed as a claim against an insolvent vendee's estate, where the property has passed into the hands of a receiver and the default was that of the receiver.

RECEIVERS (53)—MANAGEMENT OF PROPERTY—CONDITIONAL SALES CONTRACT—EXPENSES OF LITIGATION. Upon replevin against the receiver of an insolvent vendee in a conditional sales contract, for wrongful detention of the property after demand upon the receiver, the vendee's estate cannot be charged with the expenses of the litigation.

CONTRACTS (41)—VALIDITY—PUBLIC POLICY—CONDITIONAL SALES. A conditional sales contract providing that the vendee shall pay five per cent on the contract price, in addition to costs and disburse-

[1]Reported in 175 Pac. 559.

ments allowed in case of a successful action to recover the property, is void as against public policy.

SALES (182) — CONDITIONAL SALES — CONTRACTS — CONSTRUCTION. The expenses of a visit by the vendor to the vendee in a conditional sales contract, in an endeavor to adjust the claim, and expenses in returning the property, are not recoverable as expenses incurred in collecting the claim or returning the property as stipulated in the contract, in the absence of any proof that the expenses were reasonable or necessary.

SAME (182).   Under a conditional sales contract expressly agreeing to repay freight and the cost of insurance, advanced by the vendor, such items are recoverable as being in addition to the purchase price, whether there was a forfeiture of the contract or not.

PLEDGES (1)—CREATION OF LIEN—AFTER ACQUIRED PROPERTY.   A provision in a conditional sales contract pledging to the vendor all of the vendee's property then owned or thereafter acquired as security for the purchase price, does not create a lien thereon, so as to constitute the same a preferred claim as against other creditors upon property of the vendee in the hands of a receiver.

Consolidated appeals from a judgment of the superior court for Whatcom county, Pemberton, J., entered September 27, 1917, upon findings in favor of the defendant, in an action in replevin, tried to the court, and from an order entered December 21, 1917, rejecting claims in a receivership of an insolvent corporation, after a hearing before the court upon objections thereto.   Judgment affirmed; order reversed.

*Walter S. Fulton*, for appellant.

*Hadley & Abbott* and *Sather & Livesey*, for respondent.

FULLERTON, J.—The appellant, Union Machinery & Supply Company, whose place of business is at Seattle, in King county, on August 21, 1916, sold to the Kendall Lumber & Shingle Company, whose place of business is at Kendall, in Whatcom county, certain machinery and supplies for a consideration of $2,245, of which sum

$500 was paid in cash, and the balance payable in nine monthly installments of practically equal amounts, with interest at the rate of ten per cent per annum. A conditional sale contract was entered into, stipulating that the legal and equitable title to the property sold should remain in the vendor until payment in full of the purchase price. The contract also contained other features. On its face it recited that the vendee directs the vendor to ship the purchased goods to Kendall, advancing the freight charges, and that the vendee agrees to pay the local cartage and freight in all cases; and that the terms, conditions, and security printed on the back of the contract were agreed to as part of the consideration for the sale and their performance warranted by the vendee. On the back of the contract, printed in brevier type, was the following:

"Terms, Conditions and Security Referred to on the face of this Contract.

. "(1)    It is agreed that the material herein described shall be at the risk of the vendee when receipted for transportation, however the same may be shipped. And all loss thereof and damage thereto thereafter shall be borne by the vendee.

"(2)    Retention of the goods conditionally sold for a period of 10 days after taking possession, without written complaint by the vendee to the vendor, shall create a conclusive presumption that the same are satisfactory.

"(3)    Should the property conditionally sold, or any part thereof, be transported by water, marine insurance to the full value thereof shall be provided by the vendee. And in all cases and at all times the vendee shall keep the property insured against loss and damage by fire in an amount equal to the unpaid purchase price thereof. And if the subject of sale is a boiler, or has a boiler as a constituent part thereof, the vendee shall keep the same insured against loss and damage by explosion in an amount equal to the value thereof. And if it be an auto vehicle, it shall be kept insured

against collision and damage to the vehicle itself, damage to the property of others, against theft thereof and all its parts, and against liability for injury to and death of persons. The insurance companies and policy forms shall be approved by the vendor, who shall be named as the assured in the policies, and all policies shall be delivered to and held by the vendor. In case a loss should occur under any policy, an amount equal to the indemnity paid shall thereupon become immediately due and payable under this contract when the insurance money is received, irrespective of the state of the notes, except where the loss is for injury to or death of a person or persons. But if such insurance money should more than equal the total amount unpaid on the notes, including all sums otherwise due, then the over-plus shall be paid by the vendor to the vendee. No loss or damage, whether by fire or otherwise, shall operate to diminish or extinguish the liability of the vendee to the vendor hereunder, except through the payment of the insurance aforesaid.

"(4) It is agreed that the vendor may apply money received from the vendee, either upon this contract, any other conditional sale contract, lease, note, open account, or other debt, held by the vendor, as its president or secretary may elect. The right of the vendee to make special application of payments being hereby expressly waived.

"(5) The vendor may take from the vendee any form of security for the payment of the notes and the performance of the conditions of this contract, except a mortgage on the property conditionally sold; joint makers, sureties, endorsers and guarantors may be accepted on said notes; additional time for payment may be granted; new notes taken in place of old ones with security therefor; any and all security realized upon, notes reduced to judgment and the judgment enforced, without such action passing title to said property to the vendee, unless compliance with the conditions precedent set forth in section 7 hereof are thereby effected. Nor shall any default or provision of this contract be waived or invalidated thereby.

"(6)   Should any note become due and be not paid, satisfactory security shall be given as a condition of extension. And no acceptance of money due, or delay in enforcing this contract, shall be deemed an extension, or waiver of default, unless such security be given.

"(7)   The legal and equitable title to the property shall at all times remain in the vendor until the purchase price thereof as evidenced by the notes described herein, and any renewals thereof, or judgments thereon, (or as evidenced by this contract in case no notes were given), and all other sums owing from vendee to vendor, arising under this contract or otherwise, prior or subsequent in date, mature or immature, shall have been paid in full, and each and all of the warranties, covenants and stipulations are complied with. That such payment and compliance shall be conditions precedent to the vesting of title, either legal or equitable, in the vendee.

"(8)   The notes executed by the vendee shall not be deemed a payment of the purchase of the property, but shall be considered in connection with, taken as a part of, and be subject to the terms of this contract. And in case the notes described herein are not executed, the vendee shall be liable hereon just the same as if said notes were made and delivered coincident herewith.

"(9)   No person, copartnership, corporation, public officer, court, officer of any court, assignee for the benefit of creditors, receiver in insolvency, or receiver or trustee in bankruptcy, shall have the right to acquire through the vendee any right, title in or lien upon said property or any part thereof, or to be in possession thereof, or to use the same, or to make payments on this contract, whether by voluntary agreement or by operation of law. And in case of assignment, receivership or bankruptcy, the vendor may make and serve notice of default upon the vendee with the same force and effect as if served prior to such assignment, insolvency or bankruptcy, for an arrearage in payments then existing.

"(10)   The vendee shall pay all damages to the

property suffered by him, and keep the same in first class condition and repair. All repairs, substitutions and betterments made by the vendee shall immediately become the property of the vendor, and subject to the terms of this contract.

"(11) It is expressly understood that time is of the essence of this contract, and that upon the failure of the vendee to make all payments when due, and to strictly perform all of the conditions, stipulations and warranties, then, without any notice, the vendee shall be deemed in default, and all rights of the vendee in and to the property shall cease and determine, and all money paid by the vendee to the vendor shall be forever held and retained by the latter as liquidated damages. And if the vendor demands the return of the property to Seattle, said vendor may at once go upon the premises where said property is located, remove the same without legal process, return it to Seattle, and enforce payment of the expense of moving, cartage, and transportation charges incident thereto, by the vendee. Provided, that if the property has been abandoned by the vendee, or if the vendee cannot be found either in the county where the property is located or in the county of his residence given herein, no demand shall be necessary to entitle the vendor to remove the same as above, recover the expense thereof as in other cases. That the vendor may also recover of the vendee all sums incidentally due on this contract, and in addition, may enforce payment of the balance unpaid on purchase price, and forever retain the same as liquidated damages.

"(12) All costs and expenses incurred in collecting or trying to collect the notes hereinafter due, and all expenses and transportation charges in case the property is returned to the vendor by the vendee, shall be paid by the vendee.

"(13) For failure to make any payment required, or for failure to comply with any of the warranties, terms and conditions herein contained, the vendor shall have the right at once to enforce payment of all the moneys required hereby, and if full payment is not obtained the money collected may be retained as liqui-

dated damages, and the vendor may also demand the return of the property, retake the same, and forever retain it without any claim thereto by the vendee.

"(14)　That in case a replevin action or other legal remedy should be instituted to regain possession of the property, and the defendant should rebond, or in any other manner the plaintiff therein should be delayed by the defendant in obtaining possession thereof, and the judgment should be in favor of the plaintiff for possession, then there shall be allowed the plaintiff and made a part of the judgment as damages for each day so delayed, the sum of $\frac{1}{4}$ of 1% of the contract price thereof herein, which said amount is hereby agreed upon as the reasonable and ordinary rental value of the property at Seattle, for use at the premises of the vendee.

"(15)　And in the event that the vendor should successfully prosecute any action or proceeding to repossess itself of said property, or to secure or protect its rights herein, then the vendee shall pay the vendor the sum of 5% of the contract price of the property herein, the minimum of which shall be $50, which shall be made a part of the judgment to cover the expenses of such litigation, in addition to the ordinary costs and disbursements allowed by law in civil actions.

"(16)　Should any person, copartnership or corporation become possessed of the property through the action of the vendee, which is consented to by the vendor, all of the obligations hereby imposed upon the vendee shall become joint and several obligations of the successor in possession, just the same as if this contract and the notes herein described had been originally signed by such successor in possession. But this shall not relieve the original vendee of any liability.

"(17)　Should any person, copartnership or corporation other than the vendee become possessed of the property without the vendor's consent, he shall be liable to the vendor for the use thereof at the rate of $\frac{1}{4}$ of 1% of the contract price thereof per day while so in his possession. And in such cases the vendor may without preliminary demand for possession and without process, seize the property, return it to Seattle,

and recover the expenses thereof from such party so in possession, or from the vendee.

"(18)   In case the contract and notes described herein are not dated when signed, the vendee authorizes the vendor to date them as of the day when the first shipment is made hereunder.

"(19)   When this contract is entered into in pursuance of an order which includes belting or other material which is impossible at the time to particularly describe, it is agreed that the specifications thereof may be written herein by the vendor after signing by the vendee.

"(20)   Said property shall be used only for the purpose for which it was designed.

"(21)   The vendee will not permit said property to become affixed to the real estate.

"(22)   The vendee assumes and agrees to pay all assessments and taxes levied and all liens and encumbrances, which are now a charge upon the property or which may become a charge thereon hereafter.

"(23)   All persons signing this contract as officers or agents of the vendee shall be bound hereon as principals.

"(24)   The vendee covenants not to violate any of the United States Letters Patent relating to any of the property herein described, which is either controlled by the vendor, or under which the vendor has the right to manufacture and sell any of such property.

"(25)   This contract is not subject to cancellation except by written agreement of both parties hereto. And in case the vendee should notify the vendor not to make delivery of the goods, or refuse to accept them when shipped, the vendor may retain or retake the property, and at once sue the vendee and recover judgment for the total amount to be paid hereunder, including any transportation charges, cartage, storage and insurance incurred, and the allowance to indemnify the vendor against expenses of litigation as in section 15, in addition to the usual costs and disbursements allowed by law in civil actions.   Thereupon the property shall be sold by the sheriff under execution, the proceeds applied on the judgment, and the security

below given realized upon for the payment of the deficiency. That the balance remaining unpaid, if any, may be collected from the vendee by general execution.

"(26) Delivery of the property by the vendor is made contingent upon strikes, accidents and delays unavoidable or beyond the control of the vendor.

"(27) The vendor shall not be held responsible for any repairs, consequential damages, or loss resulting from defective machinery.

"(28) The notes herein, renewals thereof, or any of them, may be used as collateral security by the vendor without an assignment of this contract. And no such pledge shall invalidate this contract or pass title to the property to the vendee.

"(29) In case the vendee fails to perform any obligation imposed herein, the vendor may do so at vendee's expense.

"(30) All rights of the vendor shall pass to and be enforcible by the vendor's successors and assigns.

"(31) The parties hereto agree that upon the strict performance by the vendee of all the warranties, covenants, conditions and payments herein required, the absolute title to the property, both legal and equitable, shall pass to and vest in the vendee, free from any right or claim whatever by the vendor.

"(32) No salesman or officer has authority to agree to this conditional sale upon any condition other than as printed herein, except in the manner permitted by section 35 hereof.

"(33) And as security for the payment of all sums due and which may become due hereunder to the vendor, and all other debts now due or which may become due hereafter to said vendor from the said vendee or any others who may be liable hereon, whether said debts are in existence at the present time or hereafter incurred, said vendee and others liable hereon hereby mortgage to said vendor, all property now owned and which may be acquired by them hereafter, described as follows: All machinery of every character and description, including all logging, saw mill and shingle mill machinery, and rails, tools, equipment and supplies usually employed in connection therewith; all

logs, timber, rough and finished lumber, laths, shingles and slabs; also all contractors machinery, tools and equipment; also all accounts receivable and bills receivable, office furniture and fixtures; all live stock and increase thereof; and all other personal property; also all land, and all crops on said land now sown or planted, and which may be sown or planted within one year from the date hereof. Said property being located in the county where the property conditionally sold hereby is to be used, and in the counties where the vendee and others liable hereon may reside, and where they may have business operations pending. And if said party of the second part or others liable hereon shall fail to make the payments required hereby, or if they or either of them shall fail to pay any other indebtedness aforesaid on demand after the same is due, then the party of the first part may take possession of the property so mortgaged, using all necessary force so to do, and immediately sell the same in the manner provided by law by foreclosure sale, and from the proceeds pay the costs and expenses of the foreclosure proceedings, the litigation expenses provided for herein, the amount due hereunder, the amount due upon any other debt or debts aforesaid, and paying the surplus, if any, to the owners of the property so sold.

"(34)   This contract shall not be deemed executed by the vendor, nor shall the vendor be bound by it in any manner, until it has been signed by its president or secretary.

"(35)   The foregoing constitutes in all respects the contract between the parties hereto at the date of its execution, all previous communications between them, either verbal or written, being hereby abrogated and withdrawn. And no modification thereof or waiver of any of its terms shall be binding upon the vendor unless reduced to writing, endorsed hereon, and signed by the vendor's president or secretary."

The contract was recorded in both the conditional sale and chattel mortgage records of Whatcom county.

The machinery described in the contract was shipped

from Seattle to Kendall on August 26, 1916, and the freight advanced thereon by the appellant. In September and October of 1916, and in April, 1917, other merchandise was sold the vendee by the machinery company, and the freight thereon advanced by it. In December, 1916, the appellant procured insurance upon the property, paying the premium required by the company granting the insurance. On November 15, 1916, the vendee, being indebted to the Northwestern State Bank of Whatcom, executed and delivered to it real and chattel mortgages upon all of its property to secure the same, the chattel mortgages covering the property included in the appellant's contract of conditional sale. Action was brought to foreclose these mortgages on January 25, 1917, in which action William McCush, the respondent herein, was appointed receiver *pendente lite*. The vendee was then insolvent and largely indebted to other persons, and on July 25, 1917, the Morse Hardware Company, one of its creditors, brought an action on behalf of all its creditors, asking for the appointment of a general receiver, that the affairs of the vendee be wound up, that its property be sold, and that the proceeds of the sale be applied to the satisfaction of its indebtedness. In this action McCush was appointed general receiver.

On June 22, 1917, the appellant declared a forfeiture of its conditional sale contract and demanded a return of the property therein described to it at Seattle. The demand was telegraphed to the vendee on the same day, but return of the property was not made and the property passed into the possession of the receiver *pendente lite* appointed in the suit of the bank some two days later, and later on into the possession of the general receiver appointed in the suit begun by the Morse Hardware Company.

On September 21, 1917, the appellant began an action

against the receiver to recover the property described
in the conditional sales contract. In its complaint, in
addition to pleading facts showing its right to a return
of the property, it alleged that, under and by virtue
of "sections 14 and 17" of the conditional sales con-
tract, it was entitled to recover of the receiver for his
wrongful detention of the property the sum of one-
fourth of one per cent of the contract price thereof
per day, or the sum of $5.60 per day from the time he
took possession until the final return of the property;
that, under section 17 of the contract, he was liable to
the expense of returning the property to Seattle, which
would amount to $430; and that, because of the refusal
of the receiver to deliver the property on the appel-
lant's demand, he became liable to appellant under
section 15 of the contract in the sum of five per cent of
the contract price of the machinery, or the sum of
$112.25. In the prayer of its complaint, judgment was
demanded for a return of the property and for the
several sums mentioned, in addition to usual costs and
disbursements allowed by law. Issue was taken on
the allegations of the complaint and a trial had, in
which the court adjudged the appellant entitled to a
return of the property at the mill of the Kendall Lum-
ber & Shingle Company, the place where it was held
by the receiver, and for the usual and ordinary costs
and disbursements allowed the prevailing party by the
statutes, denying a recovery for the other items set
forth in the complaint.

Later on, the appellant filed a claim with the re-
ceiver, claiming freight prepaid on the machinery sold
under the conditional sales contract, $131.53; goods,
wares and merchandise subsequently sold the lum-
ber company, $322.60; fire insurance premium paid,
$167.80; expense of collector visiting the lumber com-
pany in an attempt to collect the debts, $50; retention

of the conditional sale property by the receiver after demand, at the percentum rate named in the contract of conditional sale, $548.80; expense of returning the property to Seattle, $430; expense of legal proceedings over and above the usual costs and disbursements, $112.25; making a total of $1,762.98. On this sum it allowed a credit of $153, leaving a net balance of $1,609.98. It also claimed a preferred lien in the amount of the net balance on all of the property of the lumber company superior in right to the claims of all other creditors, basing the claim upon the various terms of the contract of conditional sale, and particularly upon the mortgage clause therein contained. The receiver, on behalf of other creditors, objected to the allowance of the several items claimed, and especially to their allowance as preferred claims. The trial court, on the hearing, allowed on the item for freight $30.40, and for goods, wares and merchandise sold the sum of $322.60, disallowing the remainder of the items. From the sum allowed, it deducted the admitted credit, leaving a net balance of $200.05, sustaining the claim in this sum as a lien upon all of the personal property of the lumber company owned at the time of sale or subsequently acquired. The mercantile company appealed from the adverse part of the judgment in the action brought to recover the property described in the contract of conditional sale, and from that part of the last mentioned order in so far as it relates to the items of the claim rejected. The appeals were consolidated by stipulation of the parties and heard together in this court. The receiver does not appeal.

In the judgment entered in the action upon the conditional sale contract, we find no error. It was an action in replevin brought to recover property in specie. It was against an officer of the court, who held the property as the receiver of an insolvent debtor with whom

the contract giving rise to the cause of action was made. If the property did not belong to the insolvent and belonged to the appellant, the appellant was, of course, entitled to recover it; but in such an action, it was entitled to recover nothing more than the property itself or, in lieu thereof, its value, with the costs and disbursements allowed by statute and such incidental damages as the wrongful detention of the property by the receiver entailed. It could not recover for stipulated damages agreed upon between itself and the insolvent with whom the agreement was made. The wrongful detention was the receiver's wrong, not the wrong of the original contractor, and the measure for this is the legal measure, such as is usual in such cases, not a contractual measure to which the receiver was not a party. Nor would the receiver be liable in such an action for the other items demanded in the complaint. Conceding that a purchaser of property under a conditional sale contract may lawfully contract to pay, in addition to statutory costs and disbursements, such other legal expenses as the seller may be put to in an action to recover the property, such a contract would not be binding upon any other person who took the property from the contract purchaser. His liability is measured by his own contracts or his own wrongs, not the contracts or wrongs of another. The same rule applies when the wrongful detention is by a receiver. He assumed none of his insolvent's contracts by his appointment as receiver and his acceptance of the trust. So with the claim for the return of the property from its place of detention to the place stipulated in the contract. This was not the receiver's contract and no liability could attach to him therefor. If it is a valid claim, it could be presented to, and enforced against, the receiver as a general claim against the insolvent's estate, but no personal judgment

against the receiver or judgment making the claim a preferred lien against the insolvent's estate, such as is here demanded, can be recovered. Nor was the court in error in refusing to treat the several items as claims against the insolvent's estate and adjudicate them as such. In the first place, he was not asked so to do; and in the second place, no evidence was offered from which the amounts allowable can be ascertained. The judgment on this branch of the appeal will therefore stand affirmed.

As to the order made upon the claims presented to the receiver, we find no error in the rejection of the item for stipulated damages—that is, damages claimed for the retention of the property after demand for its return. Assuming, without deciding, that this was a proper subject of contract and that the contract made was not unconscionable, there was no basis shown upon which a recovery thereon can be founded. From the statement it will be remembered that the demand preceded the taking of possession by the receiver but two days. The demand did not take effect instanter. Owing to the nature of the article demanded and the distance it was to be transported, the vendee had a reasonable time to comply therewith, and could not be in default until this reasonable time expired, and nothing in the record shows that the delay for the two days was unreasonable. After the property passed into the possession of the receiver, it was in the custody of the law, beyond the control of the vendee, and he is not, nor is his estate in the hands of the receiver, liable for the delays occurring subsequent to that time.

Nor is the claim for expenses of litigation chargeable against the fund in the possession of the receiver. The action in which they were incurred was not an action against the vendee of the property. It was an action against the receiver arising after the property had

been taken from the possession of the vendee. The necessity for the action did not arise from any default of the vendee; it arose from the receiver's default, and neither the vendee nor his estate is liable beyond the costs prescribed by statute for the defaults of the receiver. But the contract was unenforceable in any event. By it the vendee of property in a conditional sale contract agreed to pay five per cent on the contract price as expenses of litigation, in addition to the costs and disbursements allowed against him in the case of a successful action brought by the vendor to repossess itself of the property. Such a contract is void as against the policy of the statute which in itself fixes the expenses so recoverable.

So, also, as to the item claimed as expenses in an endeavor to collect the claim. While it may be that the evidence discloses the fact that this sum was expended in a visit by the collector of the vendor to the vendee in which an effort was made to adjust the account, this was insufficient to make the item an obligation against the vendee, conceding that expenses of this sort are within the terms of the contract. The vendee did not agree to pay any and all expenses which the vendor saw fit to incur. Its contract must be construed to mean that it will pay the reasonable and necessary expenses incurred in collecting, or trying to collect, the account, and there is nothing in the record to show that the visit in which this expense was incurred was either reasonable or necessary. The item claimed as expense necessary to return the property to Seattle was also properly rejected; this for the reason, if no other, that the record fails to show that the expense was incurred. The promise did not create a liability. There must be proof of an actual return, or an intent to return, with definite proof of the actual or the necessary

expense of so doing. The record is wholly lacking in this respect.

We think, however, that the court erred in refusing to allow the item paid for freight, $101.08, and the insurance premium of $167.80. The court evidently denied a recovery of these items on the theory that they constituted a part of the purchase price of the machinery sold under the contract of conditional sale, and were satisfied by the forfeiture of the contract and the retaking of the property. But, as we read the contract, there was an express contract to repay the freight in case it should be advanced by the vendor, and an express promise to keep the property insured to the amount of the unpaid purchase price. The expense of this would be in addition to the purchase price and repayable when advanced by the vendor, regardless of whether there was or was not a subsequent forfeiture of the contract.

But we cannot conclude that the obligation is in any manner secured or made a lien upon the vendee's property, valid as against other creditors, by the mortgage clause in the contract of conditional sale. That instrument is nothing more than a signed, acknowledged, verified and recorded statement to the effect that the vendee pledges to the vendor all of his property then owned or thereafter to be acquired as security for all obligations which the vendee may then be owing or may thereafter incur to the vendor. Such a general statement cannot create a lien on property under the statutes of this state. To create such a lien the instrument must name as the sum secured a definite sum then owing, or a definite sum to be advanced in the future, and the property pledged must be described with reasonable certainty, so that the obligation secured and the property pledged may be ascertained by the aid of the record and by such extrinsic inquiry as the rec-

ord suggests.  Any other rule would open the door to the very frauds the legislature had taken so much pains to circumvent.

The order appealed from is therefore reversed, and the cause remanded with instructions to allow the two liens last mentioned as general claims against the property of the insolvent debtor now in the possession of the receiver.  Neither party will recover costs in this court.

MAIN, C. J., MITCHELL, TOLMAN, and PARKER, JJ., concur.