[No. 19119.   Department Two.   July 13, 1925.]

GREAT NORTHERN RAILWAY COMPANY, *Respondent*, v.
F. D. OAKLEY, *as Receiver of Danaher Lumber
Company, Appellant*.[1]

RECEIVERS (66)—CLAIMS—PRIORITIES—TORTS COMMITTED BY RE-
CEIVER.  A tort committed by a receiver gives rise to a preferred
claim against the assets of the insolvent.

RECEIVERS (48)—CONTRACTS—ASSUMPTION—EXECUTORY CONTRACTS.
The receiver of a lumber company which had committed a tort and
violated its contract in failing to burn its slashings and indemnify
a railroad company for loss, adopts the contract and is liable for
breach of its executory provisions where he continued in possession
of the land under the contract so that property therein, constituting
a substantial part of the assets, might be preserved.

RECEIVERS (75)—NUISANCE (14)—CONTINUING NUISANCE—PERSONS
LIABLE—RECEIVERS.  A receiver is liable in tort for damages by fire
spreading from an unburned slashing, allowed by him to remain
in violation of Rem. Comp. Stat., §§ 5792 and 5807, declaring such
a slashing to be a nuisance, where he failed to abate it on notice,
as required by the act, and availed himself of his possessory right
to the land for the benefit of the receivership, without complying
with the law.

SAME.  A receiver continuing a nuisance, in violation of a statute,
commits a new violation of the act and contributes to the nuisance,
so as to be liable for injury resulting from his act.

RECEIVERS (66)—PRIORITIES—INTEREST ON PREFERRED CLAIMS.  In-
terest on a preferred claim against a receiver is not allowed in
favor of the class, where the funds are not sufficient to pay interest
on all the claims.

Cross-appeals from a judgment of the superior court
for Pierce county, Clifford, J., entered October 1, 1924,
upon findings in favor of the plaintiff, directing the
payment of a claim as a preferred claim in receiver-
ship proceedings, after a hearing before the court.  Af-
firmed.

[1] Reported in 237 Pac. 990.

*L. L. Thompson,* for appellant Oakley.

*Thomas Balmer* and *Edwin C. Matthias,* for respondent.

MACKINTOSH, J.—The Great Northern Railway Company (hereafter called the railway company), in 1920, was, and still is, the owner of timber land situated in Snohomish county, and on the 16th of February of that year sold the timber upon the land to the Danaher Lumber Company (hereafter called the lumber company). The entire purchase price was paid upon the execution of the contract, which provided that the lumber company should, prior to February 16, 1922, cut and remove from the land all the timber, and conduct its logging operations in the usual, customary and workmanlike manner; that, if the timber had not been removed by February 16, 1922, all of it on that date "standing or down or cut or uncut, together with the right to remove the same . . . should wholly cease and determine and . . . revert to and revest in the railroad company." The contract further provided that all of the burning was to be done according to the laws of the state, and in such a way as to protect remaining timber on land and adjacent lands from destruction by fire. It was further provided that the lumber company was to indemnify the railway company from all liability for damages which might result from the failure of the lumber company to keep and perform all the conditions of the contract.

In July, 1920, the lumber company started its operations, and by December, 1920, it removed all the timber on the land. In April, 1921, the lumber company went into the hands of a receiver, who is the appellant in this case, and this receivership still continues. February 18, 1922, the court made an order directing the receiver to give notice to creditors of the lumber com-

pany to file their claims within sixty days thereafter. On May 30, 1922, forest fires started on lands in the vicinity of the railroad company's lands, which burned across this land and upon the land of one Atkins adjoining and destroyed property belonging to Atkins, for which he filed a claim against the railway company for damages. After the finish of the work on the land in December, 1920, there remained upon the land valuable logging machinery used by the lumber company in its logging operations. The receiver, upon taking charge of the property, allowed this machinery to remain upon the land, although he conducted no operations there, and placed it in the custody of one of the lumber company's employees.

Upon receiving this claim, the railway company, on May 9, 1923, filed a claim with the receiver, setting forth the claim of Atkins, and notifying the receiver that he would be liable for any judgment which the railway company might be compelled to pay Atkins. Atkins then instituted a suit against the lumber company and the railway company and the receiver to recover damages on account of the loss occasioned by the fire. His action was founded upon the allegation that the fire spread to his lands on account of the presence of dry slashings left upon the land of the railway company by the lumber company at the conclusion of its logging operations. Subsequently, a voluntary dismissal was taken as to the lumber company and the receiver, and then the receiver and the railway company entered into a stipulation providing that, if the railway company should settle the Atkins claim against it for $2,500, such settlement should have the effect of a judgment against the railway company in favor of Atkins after notice to the lumber company and the receiver to appear and defend.

The railway company settled Atkins' suit by paying $2,500, in January, 1924, and filed immediately a supplemental claim setting up these facts and making claim against the receiver for $2,500. Upon this claim being rejected, the railway company filed a petition in the receivership proceedings, asking that the court direct the receiver to pay the claim. This petition was heard and the court found in favor of the railway company and entered judgment directing the payment of the claim as a preferred claim from the assets of the lumber company, and this is an appeal from that judgment.

The first question and, as the decision of the case will indicate, the only one which the court finds it necessary to consider, is whether the claim is a preferred or general claim, for it must be conceded that, on the record, the tort which is the foundation of the Atkins judgment was a tort committed either by the lumber company or by the receiver. The tort consists of a failure of one or the other to make a successful burning of the slashings prior to the time that the property reverted to the possession of the railway company. As we understand the argument of the receiver, there is no claim being made that the lumber company and the receiver are both absolved from any liability merely for the reason that the fire occurred after February 16, 1922. The entire argument of the receiver is devoted to and based on the idea that this claim, under no circumstances, could be a preferred claim, and that, being a common claim, it should not be allowed for the reason that it had not been filed within the time fixed by the court, and because it could not have been computed at the time of the appointment of the receiver, and that no wrong had been committed by the lumber company, because the trial court properly

found that, at the time the lumber company ceased its operations, and at the time of the appointment of the receiver, the slashings had not been burned "because it consists largely of green timber and could not be successfully burned prior to that date." These arguments do not suggest that the railway company itself was the one liable for the fire, having, under the terms of the contract, taken reversion of the land in February, 1922, the fire occurring in May of that year. If it was a tort committed by the receiver it is a preferred claim.

Much authority is cited in substantiation of the receiver's contention that this cannot be a preferred claim, because it is predicated upon the acts or omissions of the lumber company for which the receiver is not responsible. Authorities are cited by the receiver to the point that the contract imposed no duty upon him to conduct the operations on the land in the usual, customary and workmanlike manner, and that the paragraph providing that the lumber company should indemnify the railway company for any liability arising from the failure of the lumber company to perform the terms of the contract are not binding upon him. These authorities sustain the view that the receiver is not an assignee of the lumber company, and upon his appointment he did not assume any obligation to perform executory provisions contained in the contract of the insolvent, in the absence of an adoption of the contract by him, and that before he could adopt such contract it must be for the benefit of the receivership.

It would seem that, under the facts of this case, the receiver must be held to have adopted this contract. For the benefit of the receivership, he exercised the right to remain in possession of this land under the contract so that the personal property might be pre-

served, which was a substantial part of the assets of the insolvent in his hands. Accepting the rights under the contract, he must have assumed also the duties imposed of seeing that the slashings were properly disposed of.

But, conceding that the rule is as contended for by the receiver, and that he has not adopted the provisions of the contract of the lumber company with the railway company, still that conclusion would not of itself absolve, in the instant case, the receiver from liability. For, as we view it, a liability is put upon the receiver, under the circumstances of this case, by statute. Under the contract, the lumber company had a right to remain in possession of the property until the 16th of February, 1922, and the lumber company remained in possession as long as it was a going concern, and thereafter the receiver continued that possession, as he had a right to do. During that time the railway company could not exercise any dominion over the property nor exercise any of the rights of ownership, according to the terms of the contract. This possession was, under the evidence, for the benefit of the receivership, for it allowed the receiver to maintain upon the land property belonging to the insolvent of great value, which would depreciate largely if a compulsory removal took place. At the time that the lumber company ceased its logging operations and prior to the appointment of the receiver, it was impossible, as the trial court specifically found, to successfully burn the slashings on account of the rainy season, and to thus remove the fire menace which such slashings constituted. When the receiver took possession of the property he took possession of these slashings, which constituted a nuisance, and allowed them to continue, although the ordinary and safe burning season shortly ensued after

his appointment as receiver. The apparent reason why the slashings were not then burned was that such burning would be a menace to the personal property of the insolvent, which was on the land and which the receiver was thus conserving. After the receiver took possession of the land in this condition, he allowed the nuisance to continue, and it was as a result of that continued nuisance that the destruction of the Atkins property resulted. Section 5807, Rem. Comp. Stat. [P. C. § 2582], provides:

"Any and all cut-over land or slashings in the state of Washington covered wholly or in part by inflammable debris and which by reason of such condition is likely to further the spread of fire and thereby endanger life or property, a finding to which effect by the state forester shall be prima facie evidence of such fact, is hereby declared a public nuisance, and the owner or owners thereof or the agency responsible for its existence, if such be not the owner, are hereby required to abate such nuisance forthwith under the general direction of the state forester."

Section 5807, Rem. Comp. Stat., further provides:

"If the person, firm or corporation responsible for the existence of any such nuisance shall refuse, neglect or fail to abate it after a ten days' notice by the state forester, the latter may summarily cause it to be abated and the cost thereof and of any patrol or fire fighting made necessary by such nuisance may be recovered from said person, firm or corporation responsible therefor or from the owner of the land on which such nuisance existed by an action for debt and said costs shall also be a lien upon said land and may be enforced in the same manner, with the same effect and by the same agencies as the lien provided for in section 5806."

Section 5792, Rem. Comp. Stat. [P. C. § 2569], is:

"Any and all inadequately protected forests, or deforested land covered wholly or in part by inflammable debris, or otherwise likely to further the spread of fire,

which by reason of such location or condition, or lack of protection, endanger life or property, when adjoining, lying near or intermingling with other forest land, is hereby declared to be a public nuisance, and whenever the forester shall learn thereof, he shall notify the owner, or person in control or possession of said land, advise him of means and methods that should be taken for its protection, and request him to take the proper steps to that end.''

The fact that these slashings were a nuisance is clearly established by these sections, the evidence showing that the state authorities had directed attention, under the law, of the receiver to the menace.

The receiver disputes the applicability of these sections to him on the ground that he was not the owner or person in possession of the land or the agency responsible for the existence of the nuisance, his contention being that the land was owned by the railway company. It would seem that, although he was not the owner of the fee, still he had such possessory right to the land that he would come within the evident intent of the statute and within the designation of ''owner'' as used in the statute. But, in any event, even if he was not the ''owner,'' still he was the ''agency responsible for its existence,'' for he maintained the dangerous situation and did that for the benefit of the receivership. Had he desired to absolve himself from all liability, he could either have recovered the personal property and allowed the land to go back into the possession of the railway company, or he could have destroyed the slashings as provided by law. But he chose rather to continue the nuisance which had been originally created by his insolvent and which ultimately resulted in a loss to the railway company. This was his tort, and a receivership is liable for the torts committed under it, the same as other persons: *Southwestern Surety Insurance Co. v. Pacific Coast Casualty Co.,* 92

Wash. 654, 159 Pac. 788; *Union Machinery & Supply Co. v. McCush,* 104 Wash. 62, 175 Pac. 559; *Adams v. Harvey,* 129 Wash. 483, 225 Pac. 407; High on Receivers (4th ed.), 395; 23 R. C. L. 83; 1 Tardy's Smith on Receivers, 245; Cook on Corporations, vol. 5, page 875; Thompson on Corporations, vol. 5, § 6411.

Further light can be thrown upon the meaning of § 5807, Rem. Comp. Stat., by reference to the general statutes on nuisances, especially § 9917, Rem. Comp. Stat. [P. C. § 9131-72], which provides as follows:

"Every successive owner of property who neglects to abate a continuing nuisance upon or in the use of such property, caused by a former owner, is liable therefor in the same manner as the one who first created it."

This section clearly places liability upon everyone who takes any part in continuing a nuisance, to the same extent as upon the one who first created it, and probably it does not take a statutory provision to impress this liability, for as we said in *Thornton v. Dow,* 60 Wash. 622, 111 Pac. 899, 32 L. R. A. (N. S.) 968, it existed at common law where the nuisance was one *per se,* and that this was a nuisance of that kind is manifest, for the reason that it was a situation prohibited by law, which of itself makes it a nuisance *per se.* The authorities are many holding that, at common law, one is liable for the continuation of a nuisance after coming into possession of property upon which the nuisance exists, although it was not created by him. As is said by the text-writers:

"The continuance and every use of that which is in its erection a nuisance is a new nuisance." Cooley, Torts, p. 1286.

"Any person contributing to a nuisance is liable for the injury arising from his act. It is not necessary that he should actually have aided in the creation or

maintenance of it; it is sufficient if he stands in a position to it that responsibility therefor can be legally predicated against him." Wood's, Law of Nuisances (2d ed.), p. 962.

The continuation by the receiver of this nuisance was a new violation of the statute, and the situation presented a danger and the need for action by the receiver in abating it. The same argument is advanced that, under § 9917, *supra*, which refers to "owner," the receiver was not the "owner" of the property. As a matter of fact, the receiver was the owner of the slashings. They may not have been of material value to the insolvent's estate, but they were property, and it was as the owner of these slashings and "in the use of such" that the receiver must be held responsible. Furthermore, the word "owner" in the statute must be given such a meaning as will comport with the spirit and purpose of the act, and not such a meaning as to make the act in many instances of no effect. *State ex rel. Chamberlin v. Daniel,* 17 Wash. 111, 49 Pac. 243; 36 Cyc. 1110.

The purpose of these nuisance statutes is to lead to the destruction of dangerous conditions and to afford protection to life and property, and in order to afford that protection there should always be someone who is responsible for the existence and continuation of a nuisance, and that person should come within the meaning of the word "owner" as used in the statute. The receiver was entitled, under the law, to abate the nuisance; and accompanying that right there should be a responsibility for the failure to exercise it. Other courts have held the word "owner" to be broad enough to include a receiver. *Bush v. State,* 128 Ark. 448, 194 S. W. 857; *State v. St. Joseph, etc. R. R. Co.,* 46 Mo. App. 466; *Chicago, R. I. & P. R. Co. v. State,* 84 Ark. 409, 106 S. W. 199, and this court, in *State ex rel. Hall*

*v. Savidge,* 93 Wash. 676, 161 Pac. 471, and *Miller v. Reeves,* 101 Wash. 642, 172 Pac. 815, has held to a similar effect. In *Texas Bank & Trust Co. v. Smith,* 195 S. W. (Tex. Civ. App.) 617, the court recognized that the ordinary meaning of "owner" as applied to land is one who owns the fee, but it also includes persons having a possessory right to land. To the same effect see 29 Cyc. 1549.

It would seem, therefore, that the receiver, under the statute, was impressed with the duty of destroying these slashings, and that his failure so to do was an act for which the receivership was liable, independently of any question of whether there was such a duty imposed by the contract itself, and the trial court was therefore correct in allowing the claim for the damages arising from the receiver's tort as a preferred claim, such claim being classed as a part of the operating expenses of the receivership and being superior to all general claims which arose from actions of the insolvent prior to the appointment of the receiver. 2 Tardy's Smith on Receivers, p. 1665.

This disposition of the case, as we have already indicated, makes unnecessary a consideration of many points raised by the receiver in opposition to the allowance of the claim as a common claim, including arguments as to the defects in the claims filed.

There is also in this case a cross-appeal by the railway company from the refusal of the trial court to allow interest upon its claim, but we are not disposed to interfere with the judgment in this regard, for, as stated by the authorities, interest is not allowed to members of a class in receivership if the class fund is not sufficient to allow interest to all. The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, and MITCHELL, JJ., concur.