[No. 22015.  Department One.  February 24, 1930.]

AMELIA WELLER *et al., Respondents,* v. SNOQUALMIE
FALLS LUMBER COMPANY, *Appellant.*[1]

[1]Reported in 285 Pac. 446.

*W. L. McCormick, Shorett, McLaren & Shorett,* and
*L. B. da Ponte,* for appellant.
*Edwin H. Flick* and *Stanley Kent,* for respondents.

MITCHELL, C. J.—Frank Weller and his wife, Amelia, owned the west half of the southwest quarter of section 20, township 24 north, range 8 east, W. M., and lived on it as a family home from 1902 until his death in 1925. Since his death his widow and children have owned and controlled the place. It has been used for farming.

In 1918 the Snoqualmie Falls Lumber Company, a corporation, finished and thereafter operated a saw-mill something over half a mile south and adjoining the Weller farm, and in 1921 erected and thereafter operated another sawmill south of and nearer the Weller farm. Both sawmills thereafter constantly increased their outputs so that in 1926 and 1927 they cut nearly twice as much lumber as they did in 1922 and 1923.

The contour of the ground in that immediate locality and the prevailing winds were such that, for seven to nine months each year, cinders, soot, ashes, sawdust and charred material were cast in large quantities on the Weller farm from both mills.

This deposit was more or less noticeable prior to 1926, but during that year and 1927 it became much more so because of the increase in the output of the mills, so that in January, 1928, the owners of the farm brought suit to recover on account of the damages they had sustained.

In its answer the lumber company alleged that it had approximately a fifty years' run of standing timber to cut at its mills, that it was impossible to entirely prevent the escape of particles of ashes, etc., from its stacks and burners, and it denied generally the allegations of the complaint. It further alleged that the condition complained of was unavoidable if operation of the mills was to be continued; that the location of the mill was a suitable and proper one for the lumber manufacturing business and that whatever damages, if any, the plaintiffs had suffered were merely incidental to the operation of an indispensable industry. It was further alleged that the last four or five years the plaintiffs had neglected the farm, and that if the orchard and crops had not done well it was because of poor husbandry or cultivation.

Upon the issues thus made, trial of the case was had to a jury that returned a verdict in favor of the plaintiffs. The lumber company has appealed from a judgment on the verdict.

Two assignments are that the trial court erred in denying appellant's motion for a directed verdict at the conclusion of all of the evidence, and in later denying its motion for a judgment notwithstanding the verdict, both because of insufficient facts to sustain any verdict or judgment against it, and because under the evidence plaintiffs' cause of action, if any, is barred by the statute of limitations.

On behalf of the owners of the farm, it was shown that, with the same kind of farming, the crops began to fail somewhat prior to 1926, but that during that year and 1927 it became impossible to grow anything; that twelve fruit trees had died and the balance of the orchard, some forty or fifty trees, were gradually dying; that the south twenty-five or thirty acres of the farm consists of cleared land capable of being, and

that had been, cultivated from year to year, and that, along the fence on the south side of the farm, sawdust, charred debris, ashes, cinders, etc., from the mills had fallen to a depth of three and one-half to four inches, while at other places on the farm where there has been no cultivation or disturbance of the soil the debris is more than four inches deep—the amount altogether over the farm gradually decreasing as the distance from the mill increases—and that all of the damages and loss sustained had been caused by the debris cast upon the premises from the burners and smokestacks of the two mills. There was considerable testimony along this line, by both laymen and experts.

On the contrary, there was considerable testimony introduced by the appellant, from laymen and experts, tending to show inattention to and lack of knowledge on the part of the owners in handling the farm after the death of Frank Weller. Also there was abundant evidence to show that both of the mills were of modern construction and equipment, were operated in the best possible manner to prevent as near as possible the escape of debris of the kind complained of; that the mills were well located; and, of course, that the mills were important industries generally and especially to that locality.

As to the law applicable to this case, it seldom happens that two independent cases are more nearly alike in their essential features than this one and *Bartel v. Ridgefield Lumber Co.*, 131 Wash. 183, 229 Pac. 306, 37 A. L. R. 683. The *Bartel* case involved the questions of damages and of injunction, the present case damages only. The damages in that case were to adjacent farm property caused by cinders, sawdust and burning particles cast on the land from a sawmill burner. It was stated in the opinion that our former decisions on the general principles involved in this

kind of cases appeared not to be very harmonious. Reference was then had to our cases and the apparently conflicting views in them, and then the statement was made that "our cases holding that liability for damages does not necessarily rest on negligence are in accord with the great weight of authority." (Citing cases outside of this state.) Then the court, speaking of the general rule, said:

"The rule governing in the foregoing and many other cases is not that one may use his own property as he sees fit, so long as he uses it in the usual manner and without negligence, but that one may put his property to any use he sees fit, so long as he does not thereby materially damage someone else or his property, and that negligence is not the sole test of responsibility. Where a trade or business is carried on in such manner as to materially interfere with the reasonable and comfortable enjoyment by another of his property or which occasions material injury to the property itself, a wrong is done for which an action for damages will lie, . . ."

Speaking along the same line, the court further said:

"It is probable that the rule is, and ought to be, that before an action for damages may be maintained, the injury or inconvenience must be substantial, and that redress may not be had for every slight discomfort or inconvenience."

In holding the lumber company liable in that case, it was said:

"The testimony here very clearly shows that the appellants' property has been damaged in a substantial manner, and as a direct result of the operation of respondent's mill."

The holding in that case was followed and re-affirmed in *Mattson v. Defiance Lumber Co.*, 154 Wash. 503, 282 Pac. 848.

Just so in the present case. The testimony that the

jury was at liberty to believe, and manifestly did believe, clearly showed that respondents' farm had been damaged very substantially and materially, to the extent that it is ruined, that it has been rendered worthless for agricultural purposes, as some of the owners testified, as a direct result of the operation of the two mills. It may be stated that in the present case there is no question of estoppel or other equitable defense involved. The rights and liabilities of the parties rest entirely upon principles of law, as was the situation in the *Bartel* case.

As to the statute of limitations, both sides agree that the two-year statute applies, and the argument on behalf of the appellant, in effect, is that, under the evidence on behalf of the respondents, the damage to their property accrued several years prior to 1925 from this source, as respondents knew at the time, and that the present action, not having been commenced until January 6, 1928, is barred by the statute. There would be considerable force in the argument if respondents were seeking injunctive relief. But they are not. They seek damages only. The sawmills with their burners and smokestacks did not of themselves cause the damage complained of. It was the operation of the sawmills that caused the damage. The injury to the farm was in the nature of a continuing nuisance, and, as stated in *Island Lime Co. v. Seattle*, 122 Wash. 632, 211 Pac. 285:

"We are firmly committed to the rule that one suffering from an injury in the nature of a continuing nuisance may recover damages as often as he brings action therefor. *Doran v. Seattle*, 24 Wash. 182, 64 Pac. 230, 85 Am. St. 948, 54 L. R. A. 532; *Farnandis v. Seattle*, 95 Wash. 587, 164 Pac. 225."

In this case the two-year statute was observed, the court having instructed the jury,

". . . that a suit for damages, such as this, must be instituted within two years after damage has been sustained and that this action was begun January 6, 1928. You will therefore disregard all items of damage, if any, which you may believe were sustained before the 7th day of January, 1926."

Upon the same subject, the jury was further instructed that, if plaintiffs' property had been damaged on January 6, 1926, which was the date just two years prior to the commencement of the action, by the operation of the defendant's mills, but that there had been no additional damage since that date caused by such operation, then the verdict should be for the defendant, "for the reason that any such damage or depreciation in value would be barred by the statute of limitations."

Under the law and the facts in this case, the trial court correctly denied the motion for a directed verdict and also the motion for judgment notwithstanding the verdict.

■ By the next assignment of error, appellant claims that the verdict was excessive and for that reason defendant's motion for a new trial should have been granted. In our opinion the evidence was entirely sufficient to sustain the verdict. The record shows that, prior to passing on the motion for a new trial, in which motion excessiveness of damages the jury had allowed was urged, the trial court, together with counsel on both sides, viewed the premises; and, in denying the new trial, the judge remarked that the evidence was sufficient in his opinion to sustain the verdict free from any indication that it was given under the influence of passion or prejudice.

■ Appellant claims that the refusal of the court to give its requested instruction No. 22 was prejudicial. The effect of the requested instruction was to have the

jury consider the question of whether plaintiffs' damages, if any, were caused by the operation of the mills, or in whole or in part by other causes for which the appellant was not responsible. We think, however, that this matter was sufficiently covered by the court by the instructions actually given to the jury. Among other things, the jury was told in effect that, in order to find for the plaintiff, they must find that, subsequent to January 6, 1926, plaintiffs' property had been damaged and that such damage had been caused by the depositing on the plaintiffs' land of cinders, sawdust, etc., as alleged in the complaint, and that unless they did so find that the verdict should be for the defendant. Other instructions upon this subject were also given which, altogether, we think, made the matter sufficiently clear, and in this respect it may be stated that there was considerable evidence introduced showing that in the spring of 1926 the condition of the land was such that it could have been brought back to a proper state of cultivation, and that the damages occurring thereafter in an amount equal to the verdict in this case were caused by the operation of appellant's mills.

There are one or two other questions presented with reference to instructions requested and not given. We have carefully considered them and are of the opinion that it is enough to say that those requested and refused were not correct or applicable in this kind of case, else they were sufficiently covered by instructions that were given.

One E. N. King acted as an appraiser of the estate of Frank Weller in 1925. He was called by the appellant as a witness in this case to testify as to real estate values. Upon his qualifying for that purpose, he was further asked if he had served as one of the appraisers in the Frank Weller estate, and, upon his

answering in the affirmative, he was then asked what the amount of the appraisement of this property was. Objection was interposed because it was immaterial. The objection was sustained by the court. This ruling it is claimed was prejudicial error. The appraisement of this property in the Frank Weller estate was in no way questioned or involved in the present proceedings. The question here was the market value of the property. It was entirely competent to ask this witness what that value was and counsel was so advised by the trial court. That question was asked and he was permitted to answer it. This assignment we think is without merit.

At the trial one of the respondents was examined with reference to an alleged admission of damage to this property made by a Mr. Titcomb, general manager of the lumber company, to Mr. Frank Weller. The question was objected to for the reason that the proposed conversation with Mr. Weller consisted of a self-serving declaration on his part and for the further reason that Mr. Titcomb had no authority to bind the appellant by any admission on his part. The witness was instructed not to state what her father, Mr. Weller, now deceased, said, but only the statements made by Mr. Titcomb, whereupon she testified that Mr. Titcomb picked up some of the soil on the premises and said, "I know it is bad," and that he further stated, "We are going to do the best we can by Mr. Weller." Before the witness was permitted to answer as above, it was shown that Mr. Titcomb was at that time the general manager of the appellant corporation. In our opinion the testimony was admissible, for what it was worth, being limited in its purpose as a statement in the nature of an admission against interest by the manager of appellant corporation.

One other assignment of error, numbered 7, has been sufficiently answered by what we have said upon the others.

Affirmed.

PARKER, TOLMAN, and BEALS, JJ., concur.