137 P.3d 101 (2006)
Gail WALLACE and James Wallace, Appellants,
v.
LEWIS COUNTY and John Petty, Respondents,
Gail Wallace and James Wallace, Appellants,
v.
Lewis County, John Petty, and Franklin Catlin, Respondents.
Nos. 32717-1-II, 32765-1-II, 32975-1-II.
Court of Appeals of Washington, Division 2.
June 20, 2006.
As Corrected August 15, 2006.
*104 Franklin Catlin, Toledo, WA, pro se.
Bradley Bishop Jones, Attorney at Law, Dianne Kathleen Conway, Attorney at Law, Tacoma, WA, for Appellants.
Jeffrey Scott Myers, Law Lyman Daniel Kamerrer et al, Olympia, WA, Mark Colman Scheibmeir, Hillier Scheibmeir Vey & Kelly, Chehalis, WA, for Respondents.
HUNT, J.
¶ 1 Gee Cee's, Inc. and James and Gail Wallace, owners of Gee Cee's, (collectively, Gee Cee) appeal two different superior courts' summary judgment dismissals of (1) their nuisance action against John Petty, who operated a tire disposal business on property adjacent to Gee Cee's property; and (2) their action for negligence, intentional trespass, nuisance, and inverse condemnation against Lewis County for using Petty's business for tire disposal. Gee Cee argues that (1) the County's tires are a fire hazard and create a vector problem;[1] and (2) both trial courts erred in dismissing their negligence, intentional trespass, nuisance, and inverse condemnation claims against the County.
¶ 2 The Wallaces separately appeal one trial court's denial of their motion to amend the complaint against Petty to add additional causes of action. The Wallaces argue that the trial court erred in dismissing their nuisance claim against Petty and abused its discretion in denying their motion to amend. We have linked these two cases on appeal.
¶ 3 Finding no reversible error, we affirm.

FACTS
¶ 4 In 1976 or 1977, John Petty owned a tire business, Daytona West Tire Sales, which sold recycled tire casings. He stored used tire casings on property he owned at Rogers Road and retreaded the tire casings for customers as needed.
¶ 5 During this time, the County owned and operated a tire disposal site (Lebo Site) where it would dispose of its old junk tires. But after vandals set fire to the site in 1980, the County closed it and searched for an alternative disposal method.

I. COUNTY'S TIRE DISPOSAL AGREEMENT WITH PETTY
¶ 6 Petty approached the County with a plan to open a tire disposal business on his property at Rogers Road. Petty believed that old tires would be worth money, and he *105 hoped to sell the tires for a profit. In 1981, the County entered into a formal agreement with Petty for tire disposal, which Petty viewed as a "partnership deal."
¶ 7 Petty agreed to accept the County's surplus, worn, or damaged tires without limitation. The County agreed to pay Petty $850 for the first year and to negotiate the fee for each subsequent year. The County also agreed not to develop its own facility within the Centralia-Chehalis and Napavine areas, but it apparently retained the right to use any other used tire disposal vendor.[2]
¶ 8 Petty also agreed to accept the public's tires for a fee. The agreement specified that the County had the right to regulate the location and operation of Petty's business under Washington's Constitution and statutes and that it could regulate the fee Petty charged the public.
¶ 9 Once accepted, Petty retained all rights to all tires, including the County's, which he could opt to sell for a profit. Petty also agreed that he would be "responsible for any damage done to any party which could result from a fire or any other damage done to any agency." Gee Cee's Clerk's Papers Vol. 1 at 73.
¶ 10 Implementation of the tire disposal agreement was to commence when Petty obtained all required permits. The agreement would expire five years thereafter or when either party terminated the agreement. By 1982, the County had approved Petty's tire disposal business. The County conditioned the permit on Petty's compliance with all laws, contracting with a pest control operator for rodents and insects, conforming to the fire code, and erecting a fence around his property. The County voluntarily assisted Petty with his environmental checklist, and it installed a 300-foot gravel road for improved access to the tire dump. Petty gave the County a gate key.
¶ 11 According to Gee Cee, once the disposal site was operational, Petty stored up to 189,000 tires on his property, 100,000 of which the County contributed. Gee Cee, Petty, and Petty's customers contributed the remaining tires.[3]

II. PROPERTY OWNERSHIP CHANGES
¶ 12 In 1982, Gee Cee's, Inc. acquired 20 acres of property adjacent to Petty's tire facility. In 1988, the Wallaces bought a separate parcel of land from Petty, with an option to buy another parcel where Petty stored the tires, which was adjacent to property on which Petty operated his tire disposal business. The Wallaces did not, however, exercise this option. That same year, the County closed Petty's tire disposal site because he had failed (1) to comply with new local regulations and state law regarding minimum functional standards for solid waste handling under chapter 173-304 WAC or (2) to transfer the tires to an approved site.[4]
¶ 13 On September 14, 1999, Petty sold his tire disposal property on Rogers Road to Franklin Catlin. The County unsuccessfully ordered Catlin to bring the property into compliance with applicable laws and regulations.

III. ONGOING FIRE HAZARD AND VECTOR PROBLEM
¶ 14 Petty's neighbors had begun complaining about rodents and mosquitoes coming *106 from Petty's Rogers Road property in 1979, before Petty opened his tire disposal business on the site and before he entered into the tire-disposal contract with the County. The County received additional complaints in 1998 and 1999, at least.[5] Between 1988 and 1999, the County attempted to compel Petty either to obtain a permit or to remove the tires. Petty submitted a new application for a permit in 1998, but the County ultimately rejected it for failure to meet permit requirements.
¶ 15 With the County's assistance, Petty applied for government funds to cleanup the tires. But his application was unsuccessful because the designated cleanup funds had already been dispersed to another tire disposal company. According to Gee Cee, the rodent and fire hazard problems continued unabated.

IV. PROCEDURAL HISTORY
¶ 16 On July 17, 2002, the Wallaces filed a nuisance action against the County, Petty, and Catlin in Lewis County Superior Court. Later, the Wallaces moved to amend the complaint against Petty and Catlin to include negligence and intentional trespass and to amend the complaint against the County to include negligence, intentional trespass, and inverse condemnation. On June 10, 2004, the Court allowed the amendments against the County and Catlin,[6] but it denied the requested amendments against Petty.
¶ 17 On July 6, 2004, Gee Cee filed a similar lawsuit against the same three defendants in Thurston County Superior Court based on the same four causes of actions. In their complaint, Gee Cee alleged that Petty's tire pile (1) continued to breed mosquitoes, particularly during the summer months; (2) created a rodent problem and a fire hazard; and (3) thus, caused their property values to diminish by at least 20 percent. In addition, the Wallaces alleged that they suffered personal injury, including emotional distress, from the problems on Petty's property.

A. Summary Judgments for the County in Lewis and Thurston County Superior Courts
¶ 18 On October 7, 2004, the County moved for summary judgment in both Lewis and Thurston County Superior Courts. Both courts granted the motions and dismissed both Gee Cee's and the Wallaces' actions.
¶ 19 The Lewis County Superior Court ruled that (1) the County slightly exacerbated a condition that had existed at the time of its agreement with Petty; and (2) at the time, the County neither owned the property nor owed a duty to the Wallaces under a specific statute, such as the Model Toxics Control Act, chapter 70.105D RCW.
¶ 20 The Thurston County Superior Court ruled that (1) the County was not involved with Petty other than through the general government process of permitting or contracting with an independent contractor; and (2) therefore, the public duty doctrine precluded Gee Cee's claims.

B. Summary Judgment for Petty in Lewis County Superior Court
¶ 21 On July 17, 2003, Petty moved for summary judgment. The trial court rescheduled the summary judgment hearing four times, in part because the Wallaces needed to obtain new counsel. On February 26, 2004, the Wallaces moved to amend their complaint against Petty to add claims of negligence and intentional trespass.
¶ 22 On April 30, 2004, the Lewis County Superior Court denied the Wallaces' motion to amend and, because the statute of limitations had run on the Wallaces' nuisance action, it granted summary judgment to Petty.
¶ 23 Gee Cee and the Wallaces appeal the Thurston and Lewis County Superior Courts' summary judgment dismissals of their negligence, trespass, nuisance, and inverse condemnation actions against the County. The Wallaces separately appeal the Lewis County *107 Superior Court's summary judgment dismissal of their nuisance action against Petty. We have linked these two cases on appeal. Except as otherwise necessary, we will refer to Gee Cee and the Wallaces collectively as "Gee Cee."

ANALYSIS

I. NEGLIGENCE ACTION AGAINST THE COUNTY
¶ 24 Gee Cee argues that the County negligently managed its solid-waste handling in a manner that adversely affected their properties and that both trial courts erred in dismissing their negligence actions on summary judgment.
¶ 25 The County counters that the statute of limitations barred Gee Cee's untimely negligence claims and, therefore, the trial courts properly dismissed the actions. The County is correct.

A. Standard of Review
¶ 26 Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issue of material fact. CR 56(c). The trial court must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on having its affidavits considered at face value. Seattle Police Officers Guild v. City of Seattle, 151 Wash.2d 823, 848, 92 P.3d 243 (2004).
¶ 27 When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. Wilson, 98 Wash.2d at 437, 656 P.2d 1030. The standard of review is de novo. See Seattle Police Officers Guild, 151 Wash.2d at 848, 92 P.3d 243. We may affirm the trial court on any correct ground, even though the trial court did not consider that particular ground.[7]Nast v. Michels, 107 Wash.2d 300, 308, 730 P.2d 54 (1986).

B. Statute of Limitations
¶ 28 An action for negligent injury to real property is subject to a two-year statute of limitations. RCW 4.16.130; White v. King County, 103 Wash. 327, 329, 174 P. 3 (1918); Mayer v. City of Seattle, 102 Wash.App. 66, 75, 10 P.3d 408 (2000), review denied, 142 Wash.2d 1029, 21 P.3d 1150 (2001); Will v. Frontier Contractors, Inc., 121 Wash.App. 119, 125, 89 P.3d 242 (2004), review denied, 153 Wash.2d 1008, 111 P.3d 856 (2005).[8] Such a negligence action accrues when the plaintiff suffers some form of injury to his real property. Will, 121 Wash.App. at 125, 89 P.3d 242. The injury or damage must be "actual and appreciable." Mayer, 102 Wash. App. at 76, 10 P.3d 408.
¶ 29 Where there is a delay between the injury and the plaintiff's discovery of it, the court may apply the discovery rule. If applicable, the discovery rule postpones the running of a statute of limitations until the time when the plaintiff, through the exercise of due diligence, should have discovered the basis for the cause of action. Whether the plaintiff has exercised due diligence under the discovery rule is a question of fact, which is the defendant's burden to prove. Mayer, 102 Wash.App. at 76, 10 P.3d 408 (defendant has burden of proving a statute of limitation defense).
¶ 30 Gee Cee contends that the fire hazard and vector problem depreciated its property values. Although this damage presumably started in 1979, when neighbors first reported mosquito problems, the record does not indicate when Gee Cee first knew about, or could have discovered, the fire hazard or vector problems. But under the discovery rule, the County must provide uncontroverted *108 facts showing that Gee Cee should have known about the fire hazard and rodent and mosquito problems more than two years before filing the lawsuits.
¶ 31 By at least 1988, Petty's tire pile had already spawned a continuing vector problem and fire hazard. Beginning as early as 1979, Petty's neighbors complained to the County about the mosquito problem Petty's tires caused, and Gee Cee does not argue that the vector problem diminished at all after 1979. In fact, the County's notices to Petty indicate that he failed to comply with permit regulations at least since 1988, in part based on the continuing mosquito problem.
¶ 32 Noting that Petty's tire business closed in 1985 or 1986, Gee Cee contends that the tire pile likely posed the same fire hazard in 1986 as it did when they filed their lawsuit in 2002. If the fire hazard and vector problem existed in 1988, then Gee Cee should have known about these problems then. The Wallaces, Gee Cee's owners, not only purchased part of Petty's property adjacent to his tire disposal site, but they also had a contractual option to purchase Petty's tire pile site. Moreover, the Wallaces specifically declined to purchase Petty's tire pile site because of the tires.
¶ 33 Under these facts, Gee Cee either actually knew about or, in exercising due diligence, should have discovered that the tire pile's vector problem and fire hazard injured its properties at least as early as 1988, when its negligence action thus accrued. Thereafter, Gee Cee had two years to bring an action for negligence against the County. See RCW 4.16.130. Gee Cee having waited 14 years to file their lawsuit in 2002, the statute of limitations bars its action. RCW 4.16.130. Accordingly, based on this alternative ground, we hold that the trial court properly dismissed Gee Cee's negligence claim against the County.

II. CONTINUING INTENTIONAL TRESPASS AGAINST THE COUNTY
¶ 34 Gee Cee next argues that both trial courts erred in dismissing its intentional trespass actions against the County. Again, we disagree. Gee Cee failed to establish an intentional continuing trespass; it also failed to show damages.

A. Cause of Action
¶ 35 To establish intentional trespass, a plaintiff must show (1) an invasion of property affecting an interest in exclusive possession; (2) an intentional act; (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest; and (4) actual and substantial damages. Bradley v. Am. Smelting & Ref. Co., 104 Wash.2d 677, 692-93, 709 P.2d 782 (1985). A plaintiff has three years from the date of invasion to bring an action for intentional trespass. RCW 4.16.080(1); Bradley, 104 Wash.2d at 692, 709 P.2d 782.
¶ 36 A cause of action for a continuing intentional trespass, as opposed to a permanent trespass, arises when an intrusive substance remains on a person's land, causes actual and substantial harm to that person's property, and is abatable. Bradley, 104 Wash.2d at 693, 709 P.2d 782; see Fradkin v. Northshore Util. Dist., 96 Wash.App. 118, 125-26, 977 P.2d 1265 (1999). The "trespasser" is under a continuing duty to remove the intrusive substance or condition; thus, sequential causes of action for continuing trespass persist until the intruding substance is removed. Bradley, 104 Wash.2d at 693-94, 709 P.2d 782; Fradkin, 96 Wash.App. at 126, 977 P.2d 1265, see also RCW 4.16.080. Here, if Gee Cee were able to substantiate claims that rodents and mosquitoes from Petty's tire pile have been causing on-going harm to its properties, it would have a continuing cause of action for intentional trespass.

B. Statute of Limitations
¶ 37 In the case of continuing trespass, the applicable statute of limitations does not preclude a property owner from bringing an action against the trespasser; rather, it serves only to limit damages. Bradley, 104 Wash.2d at 693, 709 P.2d 782; Fradkin, 96 Wash.App. at 126, 977 P.2d 1265. Thus, this statute of limitations would limit Gee Cee's damages to the three years preceding its timely-filed lawsuit. RCW 4.16.080(1); Bradley, 104 Wash.2d at 693-94, 709 P.2d 782. Because Gee Cee filed its *109 lawsuits in 2002, if it could meet the legal requirements for maintaining an action for continuing trespass, it would be limited to damages for the period from 1999 to 2002.

C. Possessory Rights
¶ 38 Gee Cee claims that rodents and mosquitoes from Petty's tire pile have continuously interfered with exclusive possession of its properties. Even assuming this claim to be true for purposes of summary judgment, Gee Cee's arguments fail because it cannot show that these alleged trespasses have been continuing within the meaning of the applicable law. In distinguishing between a trespass and nuisance, our Supreme Court has clearly held that where the invading substance is "transitory or quickly dissipates," it does not, as a matter of law, "interfere with a property owner's possessory rights and, therefore, [is] properly denominated [a] nuisance[.]" Bradley, 104 Wash.2d at 691, 709 P.2d 782.
¶ 39 Although in certain instances an invading substance can be both a nuisance and a trespass, the invading substances here, transitory living creatures with limited life spans, are generally not considered to be a permanent trespass.[9] On the contrary, under Bradley, the rodents and mosquitoes are properly characterized as a nuisance, not a continuing trespass, as Gee Cee attempts to characterize them. Gee Cee has, therefore, failed to show interference with their exclusive possession of their properties, the first element in establishing an action for intentional continuing trespass.[10]

D. Damages
¶ 40 Gee Cee also failed to show actual and substantial damages, necessary to avoid summary judgment. See Bradley, 104 Wash.2d at 692, 709 P.2d 782 (failure to show actual and substantial damages suffered is subject to dismissal). Gee Cee asserts only that its property values have diminished by 20 percent as a result of the County's trespass.
¶ 41 Property value depreciation is the measure of damages from permanent trespass, not from continuing trespass of the type Gee Cee alleges here. Cheskov v. Port of Seattle, 55 Wash.2d 416, 420, 348 P.2d 673 (1960); see Bradley, 104 Wash.2d at 687, 709 P.2d 782 (citing W. Rodgers, Environmental Law § 2.13 at 154-57 (1977)). Thus, Gee Cee failed to allege and to show any actionable damage resulting from intentional continuing trespass[11] by the County.
¶ 42 But even if Gee Cee had properly alleged actionable harm to their properties, Gee Cee also failed to show the amount of actual property damage incurred within the three years preceding the filing of its lawsuits. RCW 4.16.080(1); see Bradley, 104 Wash.2d at 693-94, 709 P.2d 782; Fradkin, 96 Wash.App. at 124, 977 P.2d 1265. Because the three-year statute of limitations limits the time period for which Gee Cee can collect damages, Gee Cee must necessarily show that the damages it claims occurred during the three-year statutory period; its actionable damages cannot have arisen before this three-year time period or be attributable to problems existing on Petty's property before then. Otherwise, Gee Cee's damages would have existed more than three years earlier and, therefore, would be barred by the statute of limitations. See Weller v. Snoqualmie Falls Lumber Co., 155 Wash. *110 526, 531-32, 285 P. 446 (1930), overruled on other grounds, Bradley, 104 Wash.2d at 692-93, 709 P.2d 782.
¶ 43 Because Gee Cee failed to show, not only damages attributable to the preceding three years, but also any actual damages for continuing trespass, we affirm the trial courts' dismissal of its intentional trespass claims against the County.

III. CONTINUING NUISANCE AGAINST THE COUNTY AND PETTY
¶ 44 Gee Cee similarly argues that the trial courts wrongly dismissed its nuisance actions against the County and Petty. Gee Cee argues that the tire-pile's rodents and mosquitoes are a continuing nuisance for which the County and Petty are liable.
¶ 45 The County and Petty counter that Gee Cee's nuisance claims are time barred because Gee Cee failed to file its actions within two years of the time when its causes of action accrued, namely, when the damage to its properties first occurred or when it should have recognized the damage.[12] We agree with the County and Petty.

A. Nuisance
¶ 46 Washington defines "nuisance" by statute, namely RCW 7.48.010, which provides:
The obstruction of any highway or the closing of the channel of any stream used for boating or rafting logs, lumber or timber, or whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property, is a nuisance and the subject of an action for damages and other and further relief.
In other words, a nuisance is an unreasonable interference with another's use and enjoyment of property. Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 592, 964 P.2d 1173 (1998).
¶ 47 A nuisance may be either public or private. A public nuisance is one that affects equally the rights of an entire community or neighborhood; a private nuisance is one that is not a public nuisance. RCW 7.48.130 and.150.

B. Statute of Limitations
¶ 48 Plaintiffs have two years from the time a nuisance action accrues to file a lawsuit. RCW 4.16.130; Bradley, 104 Wash.2d at 684, 709 P.2d 782 (citing Weller, 155 Wash. at 531-32, 285 P. 446); Mayer, 102 Wash.App. at 75-76, 10 P.3d 408. If, however, a nuisance is continuing, the two-year statute of limitations serves only to limit the period for which the plaintiff may collect damages.[13]Riblet v. Ideal Cement Co. 54 Wash.2d 779, 781, 345 P.2d 173 (1959); Weller, 155 Wash. at 531-32, 285 P. 446.
¶ 49 A nuisance cause of action accrues when the plaintiff initially suffers some actual and appreciable harm or when the plaintiff should have discovered the basis for a nuisance action. Mayer, 102 Wash. App. at 76, 10 P.3d 408. The possessor of property is liable for a continuing nuisance, regardless of whether that person created or maintained the nuisance; such continuation constitutes a new, actionable nuisance. Great N. Ry. Co. v. Oakley, 135 Wash. 279, 287-88, 237 P. 990 (1925); see RCW 7.48.170. Consequently, if the nuisance remains, the plaintiff may continue to collect damages for uncompensated harm until the nuisance is *111 abated. Island Lime Co. v. City of Seattle, 122 Wash. 632, 635, 211 P. 285 (1922); cf. Bradley, 104 Wash.2d at 693, 709 P.2d 782.
¶ 50 As we noted earlier, the tire pile's rodent and mosquito problem (which Plaintiffs alleged the County caused) existed at least as early as 1988. But the alleged collaborative relationship between the County and Petty, which Gee Cee argues made the County liable for the nuisance originally, ceased in 1986 or 1988.[14] Thus, Gee Cee should have brought an action against the County for its alleged role in creating the nuisance in 1988, or within the two years thereafter.
¶ 51 Petty, on the other hand, arguably remained liable for maintaining the nuisance after 1988, but only until 1999, the year he sold the property to Catlin. Therefore, Gee Cee had to file its actions against Petty in 1999, or within two years thereafter. But Gee Cee filed its lawsuits in 2002 and 2004, respectively, more than two years after the County and Petty had ended their roles in creating or maintaining the tire-pile nuisance. RCW 4.16.130. As of these later dates, Gee Cee's only causes of action for nuisance could lie against Catlin, who then owned the tire-pile property.
¶ 52 Each successive day that this nuisance continued after 1999 presumably injured Gee Cee, see Island Lime, 122 Wash. at 635, 211 P. 285, and constituted a new cause of action. See Great N. Ry., 135 Wash. at 287-88, 237 P. 990. Because neither the County nor Petty played any role in maintaining this nuisance during the two-year period before Gee Cee filed its lawsuit, Gee Cee is barred from bringing an action against the County or Petty for damages that alleged occurred during this time period. RCW 4.16.130.
¶ 53 Instead, Gee Cee's sole, remaining, viable cause of action is against the current property owner or another party for their respective roles in continuing to maintain the existing nuisance during the relevant two-year time period, regardless of who created the nuisance in the first place or who previously maintained the nuisance. See RCW 7.48.170; Great N. Ry., 135 Wash. at 287-88, 237 P. 990.
¶ 54 Therefore, we hold that the trial courts properly dismissed Gee Cee's continuing nuisance actions against Petty and the County.[15]

IV. INVERSE CONDEMNATION AGAINST THE COUNTY
¶ 55 Gee Cee next argues that the trial court erred in dismissing its actions against the County for inverse condemnation as barred by the 10-year statute of limitations under RCW 4.16.020. This argument also fails.
¶ 56 Inverse condemnation is an action to recover the value of private property that a government agency has taken or damaged without formal exercise of the government's right of eminent domain. Phillips v. King County, 136 Wash.2d 946, 957, 968 P.2d 871 (1998). A party alleging inverse condemnation must establish the following elements: (1) a taking or damaging (2) of private property (3) for public use (4) without just compensation being paid (5) by a governmental entity that has not instituted formal proceedings to condemn the property. Phillips, 136 Wash.2d at 957, 968 P.2d 871. Each time an additional or different activity causes further damage to one's property, a new cause of action arises for the additional or increased damage. Petersen v. Port of Seattle, *112 94 Wash.2d 479, 483, 618 P.2d 67 (1980).

A. Statute of Limitations  Prescriptive 10-year Period
¶ 57 Gee Cee argues that because inverse condemnation is constitutional in nature, the passage of time does not bar its right to seek just compensation from the County. The County responds that because it has a prescriptive easement for any collateral "taking" of Gee Cee's properties, emanating from its tire disposal on Petty's adjoining property, a 10-year prescriptive period governs and bars Gee Cee's inverse condemnation claims.
¶ 58 Gee Cee is correct that mere passage of time generally does not bar an inverse condemnation action. Petersen, 94 Wash.2d at 483, 618 P.2d 67. But the County is also correct that, where the government acquires a right in private property through adverse possession, the private property owner does not generally have a right to compensation by way of an inverse condemnation action. Petersen, 94 Wash.2d at 483-86, 618 P.2d 67. In order to show that a governmental agency has acquired property through adverse possession, the government has the burden to establish that its use was hostile, open, and notorious for an uninterrupted period of 10 years. Petersen, 94 Wash.2d at 485, 618 P.2d 67; Highline Sch. Dist., v. Port of Seattle 87 Wash.2d 6, 8-12, 548 P.2d 1085 (1976). The County has done so here.
¶ 59 In Petersen, the Port of Seattle (Port) operated an airport. Airplanes flying in and out of the airport created noise that interfered with the plaintiff's property. Petersen, 94 Wash.2d at 486, 618 P.2d 67. The plaintiff brought an inverse condemnation claim against the Port, a claim the Port argued was time-barred because it had acquired a prescriptive right to an aviation easement over the plaintiff's property. Petersen, 94 Wash.2d at 481-82, 618 P.2d 67. Our Supreme Court disagreed, holding that the Port had not acquired a prescriptive easement and, therefore, the 10-year statute of limitations did not bar plaintiff's action. Petersen, 94 Wash.2d at 486, 618 P.2d 67. More specifically, the Court held that the Port's use of plaintiff's property was nonhostile because the Port had paid surrounding landowners the properties' unimpacted value  the value of their properties had the airport not caused these values to diminish. The Port also participated in a study to find alternative remedies for adversely affected properties.[16]Petersen, 94 Wash.2d at 485-86, 618 P.2d 67.
¶ 60 Unlike the Port of Seattle in Petersen, here, the County has sufficiently proven that its use of Petty's property for disposing of its old tires, and any derivative "use" of Gee Cee's adjoining properties by virtue of the vector problem, was not only hostile but also open and notorious. The record shows that neither Petty nor the County attempted to hide, to conceal, or to mask the conditions the tire piles created on Petty's property. Neighbors obviously knew about the mosquito problem as far back as 1979, evidenced by their complaints to the County between 1979 and 1998. And the County has even tried to force Petty to remove the tires, at least since 1988. But during the prescriptive 10-year period, Gee Cee did not file an action for inverse condemnation, despite the problems continuing after the tire pile closed in 1988.
¶ 61 Thus, the record supports the County's prescriptive use, which bars Gee Cee's claims of inverse condemnation.[17] We hold, therefore, that the 10-year prescriptive period bars Gee Cee's inverse condemnation claims against the County.

*113 B. No Public Use
¶ 62 Although we hold that Gee Cee's inverse condemnation is time-barred, we nonetheless address Gee Cee's argument that the County's use of the tire pile was a public one. Gee Cee contends that the County damaged their properties for public use because it required Petty to open his tire disposal business to the public and because it is a public agency. Again, we disagree.
¶ 63 Inherent in any inverse condemnation claim is a nexus between the government's action that damaged private property and its reason for doing so. Thus, as we note above, to sustain an action for inverse condemnation, the plaintiff must show that the government agency acted to further a public benefit, interest, or use. See, e.g., Steilacoom v. Thompson, 69 Wash.2d 705, 419 P.2d 989 (1966) (public necessity), State ex rel. Sternoff v. Superior Court, 52 Wash.2d 282, 325 P.2d 300 (1958) (public highway), Boitano v. Snohomish County, 11 Wash.2d 664, 120 P.2d 490 (1941) (gravel pit to construct a public road). Whether a government action is "for public use" is a judicial question of law. Chiyoda Chem. Eng'g & Const. Co. v. Port of Seattle, 35 Wash.App. 785, 791, 670 P.2d 663 (1983). Here, Gee Cee fails to show the requisite nexus and public use.
¶ 64 Although the County agreed with Petty that his tire disposal business would be open to the public, Gee Cee focused its complaint on the damage caused by the County's own tires that it deposited on Petty's property, not on tires the public deposited. Accordingly, we hold that the County's tire-disposal activities, which are the subject of Gee Cee's claim of inverse condemnation, were not related to a public use or a public benefit.[18] On the contrary, the County acted as a private party who contracted with another private party for disposal of its own tires. Thus, this part of Gee Cee's inverse condemnation action also fails.
¶ 65 We hold, therefore, that the trial court did not err in dismissing Gee Cee's inverse condemnation claims on summary judgment.

V. DENIAL OF LEAVE TO AMEND COMPLAINT
¶ 66 The Wallaces separately argue that Lewis County Superior Court erred when it denied their motion for leave to amend their nuisance complaint against Petty. Although they sought to add claims of negligence and trespass against Petty, they assert that Petty failed to show their requested amendment would have prejudiced his pending summary judgment motion. Again, we disagree.

A. Standard of Review
¶ 67 CR 15(a) governs a motion to amend pleadings. Del Guzzi Const. Co., v. Global Nw. Ltd., 105 Wash.2d 878, 888, 719 P.2d 120 (1986). A party may amend a complaint only by leave of the court or by written consent of the adverse party. CR 15(a). The court must give leave when justice so requires. CR 15(a).
¶ 68 In deciding whether to grant an amendment, the trial court may consider various factors such as undue delay and jury confusion. Wilson v. Horsley, 137 Wash.2d 500, 505-06, 974 P.2d 316 (1999). The trial court may deny a motion to amend because of undue delay only where such delay imposes undue hardship or prejudice on the opposing party. Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, 100 Wash.2d 343, 349, 670 P.2d 240 (1983).
¶ 69 Nevertheless, the trial court has discretion when deciding whether to allow an amendment. And we will not overturn its decision on appeal absent a showing *114 of manifest abuse of discretion. Wilson, 137 Wash.2d at 505, 974 P.2d 316. Refusing to grant leave to amend without stated reasons or where the reasons are not readily apparent may be an abuse of discretion. Donald B. Murphy Contractors Inc. v. King County, 112 Wash.App. 192, 199-200, 49 P.3d 912 (2002). Such is not the case here, however.

B. Undue Delay
¶ 70 The Wallaces attempted to amend their complaint long after they filed their original complaint in July 2002. They waited until February 26, 2004, a month before the scheduled summary judgment hearing and more than a year and half after filing their initial complaint, to bring a motion to amend the complaint.[19] Significantly, they admit that the underlying facts had remained the same since 2002. The Wallaces clearly caused undue delay.
¶ 71 We next address whether the record supports a finding of undue hardship or prejudice. See Caruso, 100 Wash.2d at 349, 670 P.2d 240.

C. Undue Hardship or Prejudice
¶ 72 Petty argues that allowing the Wallaces to amend their complaint would have prevented him from obtaining a final decision through summary judgment. He contends that their additional claims were significantly different from their original nuisance claim, thereby causing further delay and expenses related to additional discovery. The Wallaces admit that their additional causes of actions differed significantly from their original nuisance action. Thus, their amendment could have had a prejudicial effect on Petty's defense, similar to those noted in Wilson and Murphy Contractors.[20]
¶ 73 We hold, therefore, that the trial court neither acted unreasonably nor abused its discretion in denying the Wallaces' motion to amend, especially where they waited to file an amended complaint until shortly before a dispositive summary judgment hearing, despite previously having had over a year to seek amendment. Wilson, 137 Wash.2d at 507, 974 P.2d 316 (after being aware of factual basis for the proposed amendments raising new issues on the eve of trial is unfair surprise); Del Guzzi, 105 Wash.2d at 888-89, 719 P.2d 120 (no abuse of discretion when trial court denied a motion to amend pleadings filed a week before summary judgment); Murphy Contractors, 112 Wash.App. at 199-200, 49 P.3d 912 (trial court reasonably denied motion to amend filed 10 days before summary judgment).
¶ 74 Affirmed.
We concur: BRIDGEWATER, P.J., and PENOYAR, J.
NOTES
[1] A "vector" is "an organism that carries pathogens from one host to another." WEBSTER'S II NEW COLLEGE DICTIONARY 1222 (1999). Here, Gee Cee uses the term "vector" to refer to rodents and mosquitoes.
[2] The County's agreement with Petty did not restrict its use of other vendors. And the County did, in fact, use other vendors.
[3] Petty kept no written records of tires placed on his property. He stated, however, that the following parties contributed to the tire pile: (1) the County, 100,000 tires; (2) Gee Cee, 6,000 tires; (3) Daytona West, 25,000 tires; and (4) Tires Inc., 4,000 tires. The County disputed that it had contributed to Petty's tire pile, asserting that other tire vendors supplied the County with new tires and recycled its old ones. Based on the aerial photos, the trial court noted there appeared to be no difference in the number of tires between 1979 and 1985, which suggested that the County did not significantly contribute to Petty's tire pile during that period.

Nonetheless, because this appeal is from summary judgment, we must view the facts in the light most favorable to Gee Cee and thus, disregard the County's claim. See Analysis, infra.
[4] The County specifically referred to Petty's failure to write a plan of operation; to maintain recordkeeping; to submit an annual report to the Health Department; to conduct regular inspections; and to keep inspection records and log, a closure plan detailing events and concerns, and "other items as described in the regulation."
[5] Because the record on appeal does not include the County's complete complaint files, we cannot determine whether the County received additional complaints about this property between 1979 and 1998.
[6] Catlin is not a party to this appeal.
[7] Neither trial court dismissed Gee Cee's actions against the County based on the statute of limitations' time-bar. Instead, the trial courts appear to have based their decisions on "duty" and "causation." Nevertheless, in holding that Gee Cee filed its actions after the statute of limitations had run, we affirm the trial courts' dismissal of Gee Cee's negligence actions against the County on this alternative ground.
[8] Negligent injury to property, nuisance, and trespass are distinct causes of action. Accordingly, different statutes of limitation apply. Will, 121 Wash.App. at 124-25, 89 P.3d 242.
[9] Moreover, the record on appeal contains no evidence of the life cycle of rodents or mosquitoes, and no evidence showing that the same mosquitoes and rodents have trespassed from the Petty property onto Gee Cee's properties continuously throughout the past 14 years. On the contrary, it is common knowledge that mosquitoes and rodents are not that long-lived. Thus, even assuming for purposes of summary judgment that rodents and mosquitoes reappeared each year and migrated from Petty's property to Gee Cee's properties, these pests would nevertheless be "transitory," not "permanent," for purposes of continuing trespass.
[10] We understand the frustration that Gee Cee is experiencing from the tire dump problems. Nevertheless, we must apply existing law; we cannot create a new cause of action or change existing law.
[11] Although the Wallaces contend they suffered personal injury, such as emotional distress, they argue that this injury related only to their nuisance claim, not to their intentional trespass claim.
[12] The County dissociated with Petty in 1986. And Petty sold the land in 1999, more than two years before Plaintiffs brought their lawsuit. If Gee Cee had valid claims against the County and Petty, it had to file these claims within two years after the last continuing damage occurred. Otherwise, any previous property owner, no matter how far back in the past, could be liable for a continuing nuisance, thus, rendering the statute of limitations meaningless.
[13] The Wallaces argue that the Supreme Court in Bradley changed the statute of limitations for a continuing nuisance from two to three years. Wallace Opening Br. at 17. This is incorrect. The Bradley Court stated that the three-year statute of limitations applies where an intrusion meets the four elements of intentional trespass. The Bradley Court did not change the statute of limitations period for nuisances. Bradley, 104 Wash.2d at 692, 709 P.2d 782. Nor could the Court have made such a ruling, which would have contradicted a legislatively-enacted statutory requirement. See RCW 4.16.130 (catch all period is within two years).
[14] Gee Cee points out that Petty's tire pile business ceased operations in 1986, and the County's record shows that it ordered Petty to close the business in 1988.
[15] Gee Cee asserts that its property value diminished as a result of the nuisance. But property value damage applies only to permanent nuisances, not to continuing nuisances, such as the one alleged here. Bradley, 104 Wash.2d at 687, 709 P.2d 782. Because Gee Cee does not argue permanent nuisance, it cannot rely on diminished property value for damages. Therefore, in addition to failing to meet the two-year statute of limitations, Gee Cee's nuisance claim fails to show actual and appreciable damages.

Although the Wallaces claimed personal injury, including emotional distress, as damages under its parallel, continuing nuisance claim, we do not address this issue because the statute of limitations bars their action as well.
[16] We further note that the Petersen Court also held the Port could not claim inverse condemnation because the landowners suffered additional or enhanced damages as a result of the planes changing from propeller to jet propulsion during the prescriptive period. Petersen, 94 Wash.2d at 486, 618 P.2d 67.
[17] Even assuming for purposes of summary judgment, without so deciding, that (1) the Gee Cee sustained property damage, (2) the County's actions caused Gee Cee's property damage, and (3) the County could have exercised eminent domain at the outset, Gee Cee should have filed its inverse condemnation actions no later than 1998, within 10 years from the time it claimed the tire pile on Petty's property first damaged its properties, which was not later than 1988. But Gee Cee did not amend its actions to allege the inverse condemnation claim until 2004.
[18] The Thurston County Superior County based its ruling primarily on the public duty doctrine. The public duty doctrine is an exception to Washington's waiver of sovereign immunity. Bodin v. City of Stanwood, 130 Wash.2d 726, 731, 927 P.2d 240 (1996). This doctrine prevents a person from suing the government in tort for performing a governmental function (as opposed to a proprietary function); a duty owed to all is a duty owned to none. Beal v. City of Seattle, 134 Wash.2d 769, 784, 954 P.2d 237 (1998).

Although local governments are required to regulate or to operate solid waste disposal sites, see RCW 70.95, here, the County used Petty's site for disposal of its own tires. This function is proprietary rather than governmental in nature.
[19] The trial court scheduled the summary judgment hearing on March 26, 2004. It later rescheduled the hearing to April 30, 2004.
[20] See, e.g, Wilson, 137 Wash.2d at 507, 974 P.2d 316 (depriving the opportunity for having issues resolved); Murphy Contractors, 112 Wash.App. at 199-200, 49 P.3d 912 (affect witnesses, experts, and defenses).